WOOD v. STATE ADMINISTRATIVE BOARD.

1. APPEAL AND ERROR—PARTIES—SUFFICIENCY OF BILL—KIND OF QUESTIONS FOR CERTIFICATION TO SUPREME COURT.
    Right of plaintiffs, as taxpayers, and sufficiency of bill to enjoin State officers from expending money under general appropriation law (Act No. 334, Pub. Acts 1931), on the claim that said act, or parts of it, had not been properly enacted, are not the kind of questions contemplated by Rule No. 78, Mich. Court Rules, for certification to Supreme Court, because they are not certainly controlling of the suit, and also because appeal, after decision by trial court, affords speedy and adequate opportunity for review.

2. SAME—DEFENDANT'S ANSWER SHOULD BE REQUIRED BEFORE CERTIFICATION OF QUESTION.
    Since questions should be certified to Supreme Court under Rule No. 78, Mich. Court Rules, only when facts are all in, and when answers to questions will fairly determine suit, answer by defendants should be required before certification.

3. CONSTITUTIONAL LAW—VETO POWER LEGISLATIVE FUNCTION— GOVERNOR MAY EXERCISE VETO ONLY BY CONSTITUTIONAL GRANT.
    Veto power is legislative function, not affirmative and creative, but strictly negative and destructive, and may not be exercised by governor except through constitutional grant.

On power of governor to veto part only of statute, see annotation in 55 L. R. A. 882.

4. Same—Departments of Government.

By Constitution (article 4, §§ 1, 2) State government is divided into three departments: legislative, executive, and judicial; and one department may not exercise powers properly belonging to another except in cases expressly provided in Constitution.

5. Same—Governor's Power to Veto Specific Items of Appropriation Bill.

Under Constitution (article 5, § 37), while governor may disapprove specific items *in toto* in appropriation bill, he has no power to reduce any such items in amount.

6. Same—Veto—Return of Bill to Originating House by Governor—When Return Prevented by Adjournment of Legislature.

Legislature, by temporarily adjourning from May 22d to June 18th, did not thereby prevent governor from returning, within ten days, to house of representatives, bill originating therein presented to him during said time for his approval (Const., Art. 5, § 36); only final adjournment preventing return of bill on veto.

7. Same—Return of Bill to Originating House is Essential Element of Veto.

Essential element of veto of bill is that governor "shall return it with his objections to the house in which it originated" (Const., Art. 5, § 36).

8. Same—Effect of Governor's Reducing Items in Appropriation Bill Without Returning it to Originating House.

Where governor transmitted message to house of representatives, in which appropriation bill originated, to effect that he had qualifiedly approved said bill, but had reduced many specific items in amount without disapproving any items *in toto*, and said bill, instead of being returned to house with message, was filed in office of secretary of State, said action of governor was nullity, and did not affect bill in any way, either as approval or disapproval of said items, although had bill been returned to house with said reductions within constitutional period, it would have constituted veto of objected items.

9. Same—Bill Not Returned by Governor Becomes Law Where Return Not Prevented by Adjournment of Legislature.

Where governor's action in attempting to reduce specific items in appropriation bill was nullity because of his failure to

return it to house in which it originated, and legislature had not prevented its return by adjournment, entire bill became law as passed by legislature (Const., Art. 5, § 36); there being no "pocket veto."

Certified question from Ingham; Carr (Leland W.), J. Submitted September 2, 1931. (Calendar No. 35,993). Decided September 10, 1931.

Bill by Arthur E. Wood and another against the State Administrative Board and others to enjoin defendants from expending money under House Enrolled Act No. 248 (Act No. 334, Pub. Acts 1931), on the ground that the act, or parts of it, had not been properly enacted.

*Edward B. Benscoe* and *Charles Fitch Cummins,* for plaintiffs.

*Paul W. Voorhies,* Attorney General, and *Hugh E. Lillie,* Assistant Attorney General, for defendants.

FEAD, J. Plaintiffs filed bill to enjoin the State officers from expending money under the general appropriation law of 1931, House Enrolled Act No. 248 (Act No. 334, Pub. Acts 1931), on the claim that it, or parts of it, had not been properly enacted. Defendants, without answering, moved to dismiss the bill, and the court has certified six questions for decision.

The act contains a large number of specific appropriations for the various State departments, officers, institutions, and projects. After passage by both houses of the legislature, it was presented to the governor on June 5th. On June 17th the governor transmitted to the house of representatives,

which received it of record June 18th, a message to
the effect that he had qualifiedly approved the act,
but had reduced many of the specific appropriations
in amount, without, however, disapproving any of
such items *in toto*. The bill, as qualifiedly approved,
was not returned to the house with the message, but
was filed in the office of the secretary of State. It
was not again passed by the legislature. The legis-
lature had adjourned on May 22d to June 18th,
held sessions on June 18th and 19th, and adjourned
without day on June 19th.

The first two certified questions deal with the
right of plaintiffs to maintain the suit and the suffi-
ciency of the bill. Questions of this kind are not
of the sort contemplated by the rule for certifica-
tion, as they are not certainly controlling of the suit,
and appeal, of right or by leave, after decision by
the trial court, affords a speedy and adequate op-
portunity for their review. We also suggest that
the better practice would have been to require an-
swer of defendants before certification. Questions
should be certified only when the facts are all in and
when the answers to the questions, whatever they
may be, will finally determine the suit. But, on
account of the public importance of the issues and
because the answers should substantially, if not
actually, end the litigation, we will pass upon the
other questions presented.

### Question No. 3.

"Can the governor reduce specific items in an
appropriation bill?"

The answer is "No."

Under both the Constitutions of 1850 and 1908,
the governor was given general power to veto bills.

In the Constitution of 1908, art. 5, § 37, the provision was added:

"The governor shall have power to disapprove of any item or items of any bill making appropriations of money embracing distinct items; and the part or parts approved shall be the law; and the item or items disapproved shall be void, unless repassed according to the rule and limitations prescribed for the passage of other bills over the executive veto."

Neither in the debates in the Constitutional Convention (1 Debates, pp. 493, 494), nor in the Address to the People (2 Debates, p. 1423), was it suggested that the power given the governor by section 37 includes authority to reduce an appropriation item. The debates centered upon extending the general veto power to cover distinct items in appropriation bills so the governor could eliminate an unapproved item and escape the serious alternative of legally approving such item or vetoing the whole bill. In this State the general veto power never has included and does not include the authority to modify a bill or disapprove it in part. Had the Constitutional Convention intended to enlarge such power as applied to items in an appropriation bill, presumably it would have used apt language to do so.

The veto power is a legislative function, although it is not affirmative and creative, but is strictly negative and destructive. It cannot be exercised by the executive except through constitutional grant. By Constitution, art. 4, § 1, in harmony with American political theory, the State government is divided into the three historic departments, the legislative, executive, and judicial, and by section 2 it is declared that:

"No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution."

This historical and constitutional division of the powers of government forbids the extension, otherwise than by explicit language or necessary implication, of the powers of one department to another. The language of section 37 must be read with all intendments against enlargement beyond its plain words. And if it were ambiguous, the doubt should be resolved in favor of the traditional separation of governmental powers and the restricted nature of the veto.

But the language of the provision is not ambiguous. The power of the governor under it, like the general veto power, is to approve or disapprove. Neither the language of the section nor its purpose carries necessary implication of power to reduce an item in amount, nor, in the ordinary use of words, would such a construction be justified.

This ruling is supported by the weight of authority. *Stong* v. *People, ex rel. Curran,* 74 Colo. 283 (220 Pac. 999); *Fairfield* v. *Foster,* 25 Ariz. 146 (214 Pac. 319); *Fergus* v. *Russel,* 270 Ill. 304 (110 N. E. 130, Ann. Cas. 1916 B, 1120); *Peebly* v. *Childers,* 95 Okla. 40 (217 Pac. 1049); *Mills* v. *Porter,* 69 Mont. 325 (222 Pac. 428, 35 A. L. R. 592). See, also, *Fulmore* v. *Lane,* 104 Tex. 499 (140 S. W. 405, 1082). Standing alone to the contrary is *Commonwealth* v. *Barnett,* 199 Pa. 161 (48 Atl. 976, 55 L. R. A. 882), which has been sufficiently criticized by the other courts, sometimes under the guise of distinguishing it, to render unnecessary a statement of further reasons for not accepting it.

## Question No. 4.

"If the court holds that the governor cannot reduce items, then the following questions are to be decided:

"(a)   Is such attempted partial veto of specific items a nullity, or

"(b)   Does it veto those items, or

"(c)   The tax clause not being correspondingly reduced, does it invalidate the whole appropriation bill?"

Under the facts here, the action of the governor in reducing the items, being without warrant of constitutional power, was a complete nullity and did not affect the bill in any way, either as an approval or disapproval of any such items. *Peebly* v. *Childers, supra; Fergus* v. *Russel, supra; Mills* v. *Porter, supra; Lukens* v. *Nye,* 156 Cal. 498 (105 Pac. 593, 36 L. R. A. [N. S.] 244, 20 Ann. Cas. 158); *State* v. *Holder,* 76 Miss. 158 (23 South. 643). But had the bill been returned to the originating house with such reductions, it would have constituted a veto of the objected items.

## Question No. 5.

"Did the appropriation bill as passed by the legislature become a law on account of the failure of the governor to return the bill itself to the house of representatives along with his veto message?"

The decisive part of this question will be answered later.

## Question No. 6.

"Does the fact that the legislature adjourned from May 22d to June 18th and thereby prevented the governor from returning the said House Enrolled Act No. 248 to the house in session until

June 18th, or 11 days after its presentation to him, constitute the prevention of return by adjournment provided by section 36, art. 5 of the Constitution, and thereby cause so much of said bill as was not properly signed by the governor on June 17th to fail of enactment under said constitutional provision?"

The answer is "No."

Constitution, art. 5, § 36, with the provision indicated in the question in italics, reads in part:

"SEC. 36. Every bill passed by the legislature shall be presented to the governor before it becomes a law. If he approve, he shall sign it; if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon its journal and reconsider it. On such reconsideration, if two-thirds of the members elected agree to pass the bill, it shall be sent with the objections to the other house, by which it shall be reconsidered. If approved by two-thirds of the members elected to that house, it shall become a law.   *   *   *   *If any bill be not returned by the governor within ten days, Sundays excepted, after it has been presented to him, it shall become a law in like manner as if he had signed it, unless the legislature, by adjournment, prevents its return, in which case it shall not become a law."

The weight of State authority seems to be that it is only the final adjournment of the legislature which prevents return of a bill on veto and that a temporary adjournment does not. 64 A. L. R. 1446, note. Plaintiffs, however, rest strongly on the recent case of *Okanogan Indians* v. *United States,* 279 U. S. 655 (49 Sup. Ct. 463, 64 A. L. R. 1434), the "Pocket Veto Case," in which it was held, both upon reasoning and long governmental practice,

that adjournment of the first regular session of a congress prevents return of a bill to it, although congress continues in existence for another session.

The court defined the determinative issue as—

"whether it (the adjournment) is one that 'prevents' the president from returning the bill to the house in which it originated within the time allowed."

The gist of the opinion is:

"It follows, in our opinion, that under the constitutional mandate it is to be returned to the 'house' when sitting in an organized capacity for the transaction of business, and having authority to receive the return, enter the president's objections on its journal, and proceed to reconsider the bill; and that no return can be made to the house when it is not in session as a collective body and its members are dispersed."

Undoubtedly the reasoning of the court supports plaintiffs' contention that any adjournment of the originating house, overnight, week-end, or otherwise, prevents return of a bill to it during such recess. The constitutional provisions are identical, and, while there is some difference in facts, attempt to distinguish the *Okanogan* from the instant case would be fruitless.

As the question is new in this State, we are at liberty and under duty to adopt the line of authority and reasoning which seems soundest. And we do not feel justified in applying the doctrine of the *Okanogan Case* to State legislation, because it would introduce into what was designed as a simple, practical, and definitely operating provision for executive disapproval of bills, an element disturbing or destructive of such constitutional power.

The Constitution grants to the governor the power to veto any and every bill passed by the legislature, except in the single instance of where the legislature, by adjournment, prevents an essential of veto, return of the bill to the originating house. In the excepted instance, the governor has a right or option similar to power of veto (which he may exercise by inaction), because the bill fails of passage unless he approves and signs it. This right is commonly called a "pocket veto." As a matter of fact, its effect to defeat a bill is greater than that of a veto, because the legislature may pass a bill and make it law in spite of a veto, while the "pocket veto" is final, and the bill cannot be made law without being re-introduced, re-enacted, and approved by the executive or passed over his veto, as an original bill. For convenience, however, we will refer to both the veto and the "pocket veto" as powers of the governor, as they become operative through his action or inaction.

It will be conceded that the Constitution intends to preserve such powers of the governor without possibility of abridgment by the legislature; and, further, that it purports to declare the effect, in each instance and without exception, of the failure of the governor to exercise the power of active veto within the stated time and of the action of the legislature in preventing an opportunity for active veto by adjournment. A construction which permits the legislature to impair the executive power of veto, whether active or "pocket," or which gives rise to a situation concerning a bill as to which the effect of either executive or legislative action or inaction is not stated in the Constitution, manifestly is untenable.

The doctrine of the *Okanogan Case* clearly permits legislative impairment of the veto power, or, in the alternative, may give rise to a situation outside the contemplation of the Constitution. Suppose the originating house should adjourn and remain adjourned during the whole period for executive action upon a bill, but the other house remain in session; and the governor desires to disapprove the bill. What could he do about it if the *Okanogan Case* doctrine governs? An essential element of a veto is that the governor "shall return it with his objections to the house in which it originated." So, he could not veto the bill, because he could not return it, because the originating house would not be in session. On the other hand, the other house being in session, the legislature would not have adjourned and the conditions for a "pocket veto" would not be present. What becomes of the bill? To hold that it becomes a law would abridge the executive power of veto. To find reason in the Constitution for holding that the bill fails would require sufficient violence to its language as to discover that the adjournment of the *legislature,* which prevents return, means adjournment of the *originating house.*

It is hardly conceivable that the framers of the Constitution could have understood that return of a bill on veto must be to the originating house in session, and, in the face of such understanding, have omitted provision declaring the effect on return of adjournment of such house. The omission becomes the more unexplainable when it is appreciated that the Constitution recognizes and makes provision for temporary adjournments of the respective houses. If they affect the return of bills, why was the effect not declared?

We must reject the *Okanogan Case* doctrine because we cannot hold that the originating house may destroy the executive power of veto by preventing return through its adjournment, or that adjournment of such house is adjournment of the legislature permitting "pocket veto." The alternative is that return of a bill may be made to a house, although it is not in actual session. There is no difficulty about such procedure, because, under the Constitution, each house must organize with officers, and return may be made to the proper officer as well when the house is at recess as when it is in actual session. And this construction is necessary to render the constitutional plan complete in operation and prevent uncertainty and confusion as to the important question of when a bill becomes a law.

Does temporary adjournment of both houses prevent return on veto? If only the language of the Constitution be consulted, it will be found that while temporary adjournments of the respective houses are recognized, from day to day by less than a quorum, three days or less on action of a house, and more than three days with consent of the other house (Constitution, art. 5, §§ 14, 18), it recognizes no temporary adjournment of the legislature, but provides only for its adjournment without day on concurrent resolution (article 5, § 13). The language would seem to support the view that the legislature itself may adjourn only without day.

If, however, the section be construed, as it should be, as a practical, workable part of the enactment of legislation, and in accordance with its evident purpose, and to effectuate its obvious object, the right of the legislature, as distinguished from its component branches, to temporarily adjourn is unimportant. Return of a bill on veto is not merely

a matter of ceremony between executive and legislative branches of the government. It is an act of the executive, (a) to unequivocally evidence his disapproval of the bill, and thereby (b) to confer jurisdiction on the legislature to make the bill a law in spite of his disapproval. It was carefully and skilfully designed to obviate uncertainty as to such disapproval and jurisdiction. The provision that a bill shall finally fail if the legislature, by adjournment, prevents such return is, in practical effect, a sort of penalty imposed upon the legislature for depriving the governor of the power of active veto. Where the adjournment is one which neither prevents the act of return nor requires the imposition of the penalty, the provision is not applicable.

The legislature holds one regular session. Each house is organized for the session. Temporary adjournments do not disrupt or interrupt the legislature or an organized house. Each constitutes a constitutional entity throughout the session. So, the governor may transmit the bill to the originating house through its officers and thus unequivocally evidence his disapproval. As temporary adjournment provides for further session of the legislature, its jurisdiction to pass the bill over his veto is retained.

The purpose and object as well as the language of the Constitution justifies, and, in our opinion, requires, the construction that it is only the adjournment without day of the legislature which prevents return of a bill to the originating house and calls into operation the provision for "pocket veto."

This construction presents no legislative difficulties, nor does it violate an established practice, such as confronted the court in the *Okanogan Case*. For many years it has been the custom of our legislature to enact a large number of laws late in the ses-

sion and to adjourn for a time, from a few days to several weeks, to permit the bills to be printed and presented to the governor, but with provision for later convening, at which vetoes may be acted upon and bills passed over them. We apprehend it would greatly surprise both executive and legislative branches if we were to hold that the governor could not veto a bill during temporary adjournment covering the period allowed him to consider a bill and act upon it, and that, unless he signed it, it would fail to become a law and could not be made a law by the legislature except as a new bill again subject to veto.

Returning to question No. 5, and as indicated by the foregoing discussion, the answer to that part of it reading, "Did the appropriation bill as passed by the legislature become a law?" is "Yes." The disputed items not having been approved by the governor, the entire bill became law as passed by the legislature because the governor did not return the bill to the originating house within the required time and the legislature did not prevent its return by adjournment.

BUTZEL, C. J., and CLARK, POTTER, SHARPE, and NORTH, JJ., concurred with FEAD, J.

WIEST, J. (*concurring in result*). I concur in the result. The governor may not reduce specific items in an appropriation bill. He may "disapprove of any item or items of any bill making appropriations of money embracing distinct items." The attempted reduction of specific items was a nullity, the bill stands unaffected thereby, and the signature of the governor constituted the whole bill law, for he did not disapprove any distinct item or items.

McDONALD, J., did not sit.