417 Mich. 409 (1983)
339 N.W.2d 848
In re PROPOSALS D & H
MICHIGAN STATE CHAMBER OF COMMERCE
v.
STATE OF MICHIGAN
Docket No. 70862, (Calendar No. 19).
Supreme Court of Michigan.
Argued April 7, 1983.
Decided October 17, 1983.
Miller, Canfield, Paddock & Stone (by John D. Pirich and Brian A. Kaser) for the plaintiffs.
Frank J. Kelley, Attorney General, Louis J. Caruso, Solicitor General, and Michael J. Hodge and Gary P. Gordon, Assistants Attorney General, for the defendants.
*413 Amici Curiae:
Loomis, Ewert, Ederer, Parsley, Davis & Gotting (by George W. Loomis, Lawrence J. Gagnon, Harvey J. Messing, and Ronald W. Bloomberg) for various public utilities.
BOYLE, J.
The issues of law in this case, as stipulated by the parties and as certified by the Ingham Circuit Court, are as follows:
"1. Where (a) an initiative proposal to amend a statute is placed on the ballot by petition of the electorate, pursuant to Const 1963, art 2, § 9 and (b) the Legislature enacts an amendment to the same statute, subject to Const 1963, art 4, § 34 after the initiative petitions have been filed and (c) there are conflicting provisions in both measures and (d) both measures are approved by the electors at the same election and (e) the legislative proposal receives a higher number of affirmative votes;
"(1) Does either the initiative or legislative proposal prevail in its entirety thereby rendering the other proposal inoperative; or
"(2) Where the provisions of the initiative proposal and the legislative proposal conflict, do the conflicting provisions of one proposal prevail thereby rendering conflicting provisions of the other inoperative; and
"(3) If the conflicting provisions of one proposal prevail over the other, must meaning and effect be given to the remaining provisions of both proposals?
"2. After petitions for an initiative proposal to amend a statute have been filed pursuant to Const 1963, art 2, § 9, may the Legislature enact a statute, subject to referendum, to amend the same law to be voted on at the same election as the initiative proposal, and assuming an answer in the negative, does the decision of the courts in Michigan State Chamber of Commerce, et al v Secretary of State, et al, Michigan Court of Appeals No. 65841, * * * [lv den 414 Mich 913 (1982)] constitute a bar to a decision on such question?"
*414 We rephrase the second certified question as follows: was the legislative proposal properly submitted on the general election ballot; if it was not, can this Court consider the question in light of the previous decision of the Court of Appeals in Michigan State Chamber of Commerce; and, if this Court can consider the question and finds an impropriety, is invalidation of the legislative proposal permitted?
We answer as follows:
(1) The legislative proposal prevails over the initiative proposal in its entirety, having received the highest number of affirmative votes on the general election ballot; and
(2) The Legislature may enact a statute pursuant to Const 1963, art 4, § 34 after petitions for an initiative proposal have been filed; Proposal H was properly submitted on the ballot; and, therefore, we need not reach the issue whether the decision of the Court of Appeals in Michigan State Chamber of Commerce constitutes a bar to a decision on the question.
The matter was submitted to this Court upon a stipulated statement of facts certified by the Ingham Circuit Court. The instant controversy arose out of various attempts to reform the law governing utility rate regulation, MCL 460.6 et seq.; MSA 22.13(6) et seq. The initial proposal, Proposal D, was the result of a petition brought by registered voters pursuant to art 2, § 9, filed with the Secretary of State on May 26, 1982, certified by the Board of State Canvassers, submitted to both houses of the Legislature on July 22, 1982, and placed on the November 2, 1982, general election ballot.
After the initiative petition was filed with the Secretary of State, but before the petition was *415 received by the Legislature, a second proposal, Proposal H,[1] was passed by the Legislature. This proposal, which was signed by the Governor on July 3, 1982, was explicitly made subject by the Legislature to voter approval at the November 2, 1982, general election, pursuant to Const 1963, art 4, § 34. A challenge was raised to the submission of Proposal H to the voters on the November ballot, which resulted in the Secretary of State's refusal to place it on the ballot and in the commencement of litigation in the Court of Appeals. Michigan State Chamber of Commerce, supra. On September 3, 1982, the Court of Appeals ordered the Secretary of State to place Proposal H on the November ballot, and subsequently this Court denied leave to appeal. 414 Mich 913 (1982). Both proposals were placed on the ballot, and both received more affirmative votes than negative votes, with Proposal H receiving 197,939 more affirmative votes than Proposal D.[2]
On November 19, 1982, plaintiffs commenced the instant litigation in the Ingham Circuit Court and received a temporary restraining order which remains in effect at the present time. At the joint request of the parties, the Governor urged this Court to order the lower court to certify these questions directly to this Court, which this Court did on January 19, 1983. 417 Mich 1101 (1983).
A third proposal for utility rate regulation reform, 1982 PA 304, was passed by the Legislature, and became immediately effective when signed by the Governor on October 13, 1982.
*416 The following chronology of relevant dates is necessary to a full understanding of the issues presented:
 May 26, 1982 Proposal D initiative petitions filed with the
 Secretary of State.
 July 3, 1982 Proposal H signed by the Governor, effective upon
 approval by the voters at the November 2, 1982,
 general election.
 July 22, 1982 Proposal D initiative petitions certified by the
 Board of State Canvassers and Proposal D delivered
 to the Legislature.
 October 13, 1982 1982 PA 304 signed by the Governor, effective
 immediately.
 November 2, 1982 General election; Proposals D and H are approved by
 the voters; Proposal H receives the highest
 affirmative vote.
 November 22, 1982 The Board of State Canvassers certifies that both
 Proposals D and H passed; Proposal H becomes
 effective (by its terms).
 December 3, 1982 Proposal D becomes effective.
Before the certified questions themselves are addressed, a brief discussion of the substance of the various proposals and of the recent history of utility rate regulation is in order.
In response to the energy crisis of the 1970's, the Legislature enacted 1972 PA 300, which permitted utility companies to unilaterally adjust the cost of fuel to utility consumers during the course of the year without having to await the general rate hearing before the Public Service Commission. The adjustment clause mechanism was strongly criticized by various consumer groups. In this milieu *417 the three proposals at issue in this litigation were drafted.
The key features of each proposal are as follows:
Proposal D, an initiative grounded on art 2, § 9, amends MCL 460.6a, 460.6b; MSA 22.13(6a), 22.13(6b); outlaws unilateral fuel, purchased power, and purchased gas adjustment clauses in residential utility rate schedules; and prohibits public utilities from passing through fuel costs to customers in increased rates without prior approval at a general rate hearing. Under Proposal D, no rate increase hearing may be conducted simultaneously with or distinct from a general rate proceeding. The latter proceeding is a complete hearing on all elements of utility service.
Proposal H, a legislative enactment submitted to referendum pursuant to art 4, § 34, also amends MCL 460.6a, 460.6b; MSA 22.13(6a), 22.13(6b), but in contrast to Proposal D, allows rate adjustment clauses where the clauses operate after a limited issue hearing on the cost of fuel, purchased power, and purchased gas. Under Proposal H, the hearing to determine the cost of fuel, purchased power, and purchased gas may proceed distinct from and concurrent with the general rate hearing.
Finally, 1982 PA 304, a legislative enactment effective immediately upon signature of the Governor, amended MCL 460.6a, 460.6b; MSA 22.13(6a), 22.13(6b) and added MCL 460.6h-460.6m; MSA 22.13(6h)-22.13(6m). In contrast to Proposal D, 1982 PA 304 allows existing adjustment clauses to remain in effect temporarily. Like Proposal H, 1982 PA 304 authorizes future rate adjustment clauses which operate after a limited issue hearing on the cost of fuel, purchased power, and purchased gas. 1982 PA 304 then goes beyond both Proposals D and H to provide a comprehensive *418 full-hearing procedure for rate recognition of increased fuel, purchased power, and purchased gas costs.
We allowed certification in this case to decide which of the two conflicting proposals passed by the voters at the November 2, 1982, general election is operative. In resolving this question, we turn first to the second certified question which has been previously stated.
I. SECOND CERTIFIED QUESTION
Two provisions of the constitution are in issue here. Const 1963, art 4, § 34 reads as follows:
"Any bill passed by the legislature and approved by the governor, except a bill appropriating money, may provide that it will not become law unless approved by a majority of the electors voting thereon."
Article 2, § 9 of the 1963 Constitution provides:
"Sec. 9. The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. The power of initiative extends only to laws which the legislature may enact under this constitution. The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds and must be invoked in the manner prescribed by law within 90 days following the final adjournment of the legislative session at which the law was enacted. To invoke the initiative or referendum, petitions signed by a number of registered electors, not less than eight percent for initiative and five percent for referendum of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required.
"No law as to which the power of referendum properly *419 has been invoked shall be effective thereafter unless approved by a majority of the electors voting thereon at the next general election.
"Any law proposed by initiative petition shall be either enacted or rejected by the legislature without change or amendment within 40 session days from the time such petition is received by the legislature. If any law proposed by such petition shall be enacted by the legislature it shall be subject to referendum, as hereinafter provided.
"If the law so proposed is not enacted by the legislature within the 40 days, the state officer authorized by law shall submit such proposed law to the people for approval or rejection at the next general election. The legislature may reject any measure so proposed by initiative petition and propose a different measure upon the same subject by a yea and nay vote upon separate roll calls, and in such event both measures shall be submitted by such state officer to the electors for approval or rejection at the next general election.
"Any law submitted to the people by either initiative or referendum petition and approved by a majority of the votes cast thereon at any election shall take effect 10 days after the date of the official declaration of the vote. No law initiated or adopted by the people shall be subject to the veto power of the governor, and no law adopted by the people at the polls under the initiative provisions of this section shall be amended or repealed, except by a vote of the electors unless otherwise provided in the initiative measure or by three-fourths of the members elected to and serving in each house of the legislature. Laws approved by the people under the referendum provision of this section may be amended by the legislature at any subsequent session thereof. If two or more measures approved by the electors at the same election conflict, that receiving the highest affirmative vote shall prevail.
"The legislature shall implement the provisions of this section."
Defendants contend that once the petitions for Proposal D were filed the Legislature was obligated *420 to proceed, if at all, under art 2, § 9 rather than art 4, § 34 and that, because the Legislature failed to comply with the provisions of art 2, § 9, Proposal H was improperly placed on the ballot. Therefore, defendants maintain, Proposal D is the only validly approved measure on the subject and Proposal D must prevail as the applicable law.
Plaintiffs respond that Proposal H was enacted pursuant to the Legislature's powers under art 4, § 34, not art 2, § 9. Therefore, the plaintiffs argue, the provisions of art 2, § 9 are not dispositive of the validity of Proposal H as a ballot measure. Accordingly, plaintiffs conclude that Proposal H was properly placed on the ballot at the November 2, 1982, general election.
We agree with the plaintiffs. We begin this discussion by acknowledging that Proposal H addresses the same subject matter and amends the same sections of MCL 460.6a, 460.6b; MSA 22.13(6a), 22.13(6b) as does Proposal D. Moreover, the changes proposed in Proposal H clearly conflict with those in Proposal D. See the discussion above. We do not, however, find these facts dispositive.
We are unable to agree with defendants' contention that when an initiative petition is filed with the Secretary of State, any conflicting legislative action on the same subject must be treated as a countermeasure to the initiative under art 2, § 9, ¶ 4 and that the provisions of art 4, § 34 are suspended. Defendants' assertion is contradicted by the plain language of art 2, § 9, ¶ 3, which provides that the Legislature shall act with regard to a law proposed by initiative petition "within 40 session days from the time such petition is received by the legislature." (Emphasis added.) Thus it is clear that the framers of the constitution did not intend the provisions of art 2, § 9, ¶ 4 to apply *421 upon filing of an uncertified petition. Rather, it is only when a certified petition is "received by the legislature" that the provisions of art 2, § 9, ¶¶ 3-4 come into play.[3]
In addition, we are guided by the fundamental rule of constitutional construction which requires this Court to construe every clause or section of a constitution consistent with its words or sense so as to protect and guard its purposes. Michigan Farm Bureau v Secretary of State, 379 Mich 387, 394; 151 NW2d 797 (1967). We are also mindful of the principle that all constitutional provisions enjoy equal dignity. People v Blachura, 390 Mich 326, 333; 212 NW2d 182 (1973). We therefore reject defendants' approach which would require us to nullify the plain language of art 2, § 9, ¶ 3 and to restrict the operation of art 4, § 34.
We are satisfied that the result here reached does not frustrate the constitutional policy and objective of the initiative process. This Court has stated that art 2, § 9 does not bar re-enactment by the Legislature of the same or similar measures after the effectiveness of a prior measure has been suspended by certification of a petition for referendum. Michigan Farm Bureau, supra, p 396. If art 2, § 9 does not suspend legislative power under the circumstances described in Michigan Farm Bureau, then it is consistent for us to hold that the filing of an initiative petition does not suspend the Legislature's authority to act under art 4, § 34.
Defendants also contend that Proposal H must fail because, assuming that the Legislature had authority to enact Proposal H, the constitution affords a "higher plane" to measures adopted under *422 the initiative provisions of art 2, § 9. Defendants contend that because Proposal D was placed on the ballot pursuant to that provision it must prevail over Proposal H which was not enacted under art 2, § 9.
We recognize that the initiative provisions are powers reserved to the people and that therefore they must be guarded against "conceivable if not likely evasion or parry by the legislature." Michigan Farm Bureau, p 393.
However, there is simply no foundation for a "higher plane" theory on the facts of this case. Application of such a theory here would produce a result contrary to the rationale of the theory. The notion of a "higher plane" for initiative measures is based on the concept that the people are the ultimate repository of political authority. Its application in this case would require this Court to invalidate a proposal which has been enacted by almost 60% of the voters and validate a proposal adopted by a bare majority. Such action by this Court would be in derogation of the expressed popular choice in the name of a theory advanced on behalf of the popular choice. In addition, that result would be contrary to the strong presumption which favors the validity of a legislative enactment which has received both legislative approval and approval of the qualified voters of the state at a regularly called election. City of Raton v Sproule, 78 NM 138, 142; 429 P2d 336 (1967). See, also, Chaney v Bryant, 259 Ark 294; 532 SW2d 741 (1976); City of Jackson v Comm'r of Revenue, 316 Mich 694, 718; 26 NW2d 569 (1947). Absent a valid claim that enactment of Proposal H was an impermissible infringement on the initiative power, such an anomalous result cannot be accepted.
Finally, while not urged directly, it has been *423 suggested that the Legislature's failure to comply with the terms of art 2, § 9, ¶ 4 and the inclusion of both Proposals D and H on the same ballot impermissibly affected the outcome of the election by confusing the voters. It can fairly be said that the potential for voter confusion is equally inherent in the countermeasure procedure of art 2, § 9, ¶ 4. However, the political foundation for initiative and referendum is the assumption that a free people act rationally in the exercise of their power. This assumption is the cornerstone of a democratic form of government:
"`The people are presumed to know what they want, to have understood the proposition submitted to them in all of its implications, and by their approval vote to have determined that this [proposal] is for the public good and expresses the free opinion of a sovereign people.'" Keenan v Price, 68 Idaho 423, 434; 195 P2d 662 (1948).
Fundamental principles of democratic self-government preclude the judiciary from substituting its judgment for that of the people. We have only that authority to overturn a proposal adopted by the people given us by the constitution. "Voter confusion" regarding Proposals D and H, whether an ancillary result of the initiative process or a product of political activity in support of, or in opposition to, the proposed laws, does not permit the judiciary to assume an authority to take corrective action which has not been granted by the organic instrument of government.
In summary therefore, we conclude that the provisions of art 4, § 34 were not suspended by the filing of the initiative petitions, and therefore, Proposal H was properly submitted to the voters.
*424 II. FIRST CERTIFIED QUESTION
We next turn to the first certified question in which we are asked to resolve the conflict between two competing proposals adopted by the voters at the same general election. Defendants maintain that Proposal D should prevail despite the fact that it was Proposal H which received the greater number of affirmative votes. In essence, defendants ask us to invalidate a law enacted and approved by a majority of the voters of this state. This we decline to do.
We acknowledge that there is no directly applicable constitutional provision to guide us in resolving this question. The constitution of this state does not contain a provision to resolve the situation in which voters approve both an initiative proposal and a legislative enactment submitted to the voters for approval. However, as a matter of constitutional interpretation, we are not precluded from looking to other sections of the constitution for guidance in deciding this issue.
Article 2, § 9, ¶ 5 of the Constitution of 1963 contains the following conflict resolution provision:
"If two or more measures approved by the electors at the same election conflict, that receiving the highest affirmative vote shall prevail."
We conclude that this provision may appropriately be "borrowed" to resolve the conflict presented here.
In addition, even if we did not resolve the conflict question by borrowing the resolution clause of art 2, § 9, ¶ 5, our holding on this issue is supported by the basic premise that in a republican form of government the "Supreme Power resides *425 in the body of the people." Chisholm v Georgia, 2 US (2 Dall) 419, 457; 1 L Ed 440 (1793); In re Interrogatories Propounded by Senate Concerning House Bill No 1078, 189 Colo 1, 9; 536 P2d 308 (1975). This principle is embodied in the reservation clause of the Michigan Constitution, art 1, § 1. A holding in this case which would enable a proposal receiving less than the highest number of affirmative votes to prevail would be contrary to the above premise and an infringement on the power of the people to express their will.
While several courts have stated in dicta that in the absence of a conflict-resolution provision two conflicting proposals passed on the same day must both fail because it is impossible to know the final will of the voters, we have found no instance in which a court has actually struck down both enactments. In each instance the courts have strained either to invalidate one of the two proposals or to construe the proposals harmoniously. See, e.g., Opinion to the Governor, 78 RI 144, 148; 80 A2d 165 (1951); State ex rel Nelson v Jordan, 104 Ariz 193, 196; 450 P2d 383 (1969); see, also, In re Interrogatories, supra.
We therefore find that Proposal H prevails over Proposal D,[4] because Proposal H received the highest affirmative vote in the November 2, 1982, general election.
Consistent with this reasoning, we also hold that Proposal H prevails in its entirety. The voters of this state exercised a choice between Proposals H and D as whole proposals, and chose Proposal H. Any piecemeal integration of the nonconflicting *426 provisions of Proposal D would be in derogation of this choice.
We reject defendants' contention that Proposal D impliedly repealed Proposal H by virtue of Proposal D's later effective date. As noted above, art 2, § 9, ¶ 5 can be borrowed to resolve any conflict. Furthermore, both proposals were enacted on the same day by popular approval of the voters. Consequently, contrary to defendants' assertions, this is not an instance in which a later enactment operates to repeal a prior one of the same session where their terms conflict. It is the date of enactment, rather than the effective date, that is dispositive. See 1A Sands, Sutherland Statutory Construction (4th ed), § 23.17, p 251; OAG 1967-1968, No 4617, p 210 (March 18, 1968).
III. EFFECT OF 1982 PA 304 ON PROPOSAL H
In addition to the certified questions, we requested that the parties address the effect of 1982 PA 304 on Proposal H. Defendants argue that the Legislature enacted 1982 PA 304 after it enacted Proposal H[5] and that, because these two measures conflict, 1982 PA 304, the later-enacted provision, repeals Proposal H, rendering it void and of no effect. We reject this assertion on the basis of our conclusion that Proposal H was enacted on November 2, 1982, by popular approval of the voters. Prior to that date, Proposal H had no effect and hence was not yet "enacted". Accordingly, Proposal H was the later enactment and was not repealed by the enactment of 1982 PA 304.[6]
*427 IV. CONCLUSION
For the reasons stated, we find that Proposal H prevails in its entirety over Proposal D.
No costs.
WILLIAMS, C.J., and KAVANAGH, LEVIN, RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.
BOYLE, J.
We concur in the reasoning and result of the majority opinion, but we are writing separately to respond to a significant argument made by the defendants.
The defendants claim that the Legislature subverted art 2, § 9 by avoiding the "heightened vote requirement" of art 2, § 9, ¶ 5.
The essence of this claim is the contention that an art 2, § 9, ¶ 4 countermeasure, if approved by the electors, cannot be amended or repealed except by a three-fourths vote of both houses, while an art 4, § 34 enactment, once approved by the Legislature, can be easily amended or repealed by a "simple majority" of the Legislature. It is urged, therefore, that in acting pursuant to art 4, § 34 the Legislature avoided the heightened vote requirement of art 2, § 9, ¶ 5.
We reject this theory because in our judgment the three-fourths voting requirement of art 2, § 9, ¶ 5 is not applicable to an art 2, § 9, ¶ 4 countermeasure. *428 Article 2, § 9, ¶ 5 provides in relevant part:
"No law initiated or adopted by the people shall be subject to the veto power of the governor, and no law adopted by the people at the polls under the initiative provisions of this section shall be amended or repealed, except by a vote of the electors unless otherwise provided in the initiative measure or by three-fourths of the members elected to and serving in each house of the legislature. Laws approved by the people under the referendum provision of this section may be amended by the legislature at any subsequent session thereof."[1]
The plain language of the constitutional provision convinces us that the three-fourths vote requirement is applicable only to a "law adopted by the people * * * under the initiative provisions of this section." (Emphasis added.) It is not applicable to a law adopted by the people under the countermeasure provision of art 2, § 9, ¶ 4. Reason and logic support this conclusion. First, an initiative measure is, by definition, "initiated" by the voters, not by the Legislature.[2] The Convention Comment to Const 1963, art 2, § 9 further clarifies the meaning of this language.
"No laws initiated or adopted by the people can be vetoed; and no law initiated and adopted by them can be amended or repealed except by a vote of the people unless otherwise provided in the initiative measure, or *429 by three-fourths of the members in each house of the legislature." 2 Official Record, Constitutional Convention 1961, p 3367. (Emphasis added.)
It follows from this distinction that because a legislative countermeasure under art 2, § 9, ¶ 4 may be adopted by the people, but is not also initiated by them, it is not subject to the three-fourths vote requirement for amendment or repeal.
Second, a countermeasure, enacted by the Legislature subject to the approval of the voters, is most analogous to a law "approved by the people under the referendum provision" of art 2, § 9 and hence is subject to amendment or repeal by simple majority of the Legislature "at any subsequent session thereof". Third, a review of the comments of Delegate Hutchinson at the Constitutional Convention indicates that the three-fourths affirmative vote provision of art 2, § 9, ¶ 5 was intended to apply only to voter-initiated "initiatives". 2 Official Record, Constitutional Convention 1961, pp 2395-2397.
Therefore, even if the Legislature had enacted Proposal H as a countermeasure under art 2, § 9, its approval by the voters would not have invoked the heightened vote requirement for its amendment or repeal. Thus, the fact that the Legislature chose to proceed under art 4, § 34 and enact a measure which can also be repealed or amended by a simple majority does not in any way weaken the protections offered by the initiative provisions of art 2, § 9, ¶ 5.
BRICKLEY and CAVANAGH, JJ., concurred with BOYLE, J.
NOTES
[1] This proposal was enacted by the Legislature as 1982 PA 212. This opinion will refer to 1982 PA 212 exclusively as Proposal H.
[2] The official results of the November 2, 1982, general election ballot, as certified by the Board of State Canvassers, are as follows:
 Yes No
 Proposal H 1,670,381 1,131,990
 Proposal D 1,472,442 1,431,884

[3] We are not faced with the question here of whether the Legislature may act under art 4, § 34 after it receives a certified initiative petition. Therefore, we do not decide under what circumstances, if any, it may constitutionally do so.
[4] Plaintiffs also contend that Proposal D violates the constitutional principles of federal pre-emption and due process. Because of our resolution of the conflict between Proposal D and Proposal H by resort to art 2, § 9, ¶ 5, this challenge has been mooted. Defendants' motion to strike plaintiffs' constitutional challenge is likewise mooted.
[5] Proposal H was passed by the Legislature and signed by the Governor on July 3, 1982, subject to the approval of the voters at the next general election. 1982 PA 304 was passed by the Legislature on October 13, 1982, effective immediately.
[6] Both parties acknowledge that there are inconsistencies between Proposal H and 1982 PA 304, although the parties differ as to the extent the two might be reconciled. While this Court raised the question of the effect of 1982 PA 304 on Proposal H, the converse question of the effect of Proposal H on 1982 PA 304 was not asked, nor was it among the questions certified to this Court. Because this issue was not properly raised and its consideration is not necessary in answering the certified questions, we decline to consider it here. In re Certified Questions, Karl v Bryant Air Conditioning Co, 416 Mich 558, 564, fn 2; 331 NW2d 456 (1982); Swartz v Dow Chemical Co, 414 Mich 433, 446; 326 NW2d 804 (1982); Turner v Consumers Power Co, 376 Mich 188, 191-192; 136 NW2d 1 (1965); Heider v Michigan Sugar Co, 375 Mich 490, 517; 134 NW2d 637 (1965) (ADAMS, J., dissenting).
[1] "No law initiated or adopted by the people shall be subject to the veto power of the governor" is a separate and independent clause from that which follows it. Thus the phrase "no law initiated or adopted" relates only to the subject of the "veto power of the governor."
[2] An initiative is "a procedure by which a specified number of voters may propose a statute, constitutional amendment, or ordinance." The Random House College Dictionary (rev ed, 1980), p 686.