*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SENATE and SENATE MAJORITY LEADER,

        Plaintiffs-Appellees/Cross-Appellants,

v

HOUSE OF REPRESENTATIVES and HOUSE CLERK,

        Defendants-Appellants/Cross-Appellees,

and

HOUSE SPEAKER,

        Defendant.

FOR PUBLICATION
October 27, 2025
12:10 PM

No. 374786
Court of Claims
LC No. 25-000014-MB

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

MURRAY, J. (*concurring in part, dissenting in part*).

I concur with the lead opinion that the Legislature has a clear constitutional duty to present bills to the Governor that were passed by both houses, as the text within Const 1963, art 4, § 33 could not be clearer. *Wood v State Admin Bd*, 255 Mich 220, 229; 238 NW 16 (1931) ("The Constitution grants to the Governor the power to veto any and every bill passed by the Legislature . . . ."). As explained below, however, although the Constitution provides a time period during which the Legislature must present enrolled bills to the Governor, because that time frame has passed, there is no constitutionally available remedy for this particular violation.

In the normal course of things, when the Legislature passes a bill, it is enrolled and is presented to the Governor. The Governor then has "14 days measured in hours and minutes from the time of presentation in which to consider it." Const 1963, art 4, § 33. If the Governor signs the bill, it becomes law. *Id.* If she vetoes the bill, it must be returned to the house where it originated, and the Legislature may override the veto by a two-thirds vote of each house. *Id.* "If any bill is not returned by the governor within such 14-day period, *the legislature continuing in*

*session*, it shall become law as if he had signed it." *Id*. (emphasis added). On the other hand, if the Governor does not approve the bill, and within the 14-day period the Legislature "finally adjourned the session at which the bill was passed," it will not become law. *Id*. This type of veto by inaction, which occurs when the Legislature has ended its two-year term, is referred to as a "pocket veto." *Wood*, 255 Mich at 229. Although § 33 contains time frames on gubernatorial acts after presentment, it does not contain an explicit time frame for presentment.

Because there is no *explicit* time frame for presentment within § 33, defendants argue that to judicially impose a time frame on *when* the Legislature must present an enrolled bill would be a violation of the separation of powers provision of the Constitution, Const 1963, art 3, § 2. There is much appeal to that argument, as the judiciary is not empowered to add language to the constitution—that is the peoples' job. *In re Proposals D & H*, 417 Mich 409, 423; 339 NW2d 848 (1983) ("Fundamental principles of democratic self-government preclude the judiciary from substituting its judgment for that of the people."). And, in fact, some courts from our sister states have held that, in the absence of a time period set out in their state constitution, courts cannot impose one. See e.g., *Zimmerman v State*, 76 Misc2d 193, 198-199; 348 NYS2d 727 (1973). Other courts disagree, with some imposing a "reasonable" time period for presentment. See *Campaign for Fiscal Equality v Marino*, 87 NY2d 235, 238-239; 661 NE2d 1372 (1995).

But Michigan courts need not engage in an unconstitutional act to provide a time frame for presentment, as one can be found through a combination of constitutional provisions, including Const 1963, art 4, §§ 3, 13, and 33. In considering those provisions, it becomes evident that all bills must be submitted to the Governor *no later than* 11:59 a.m. on the second Wednesday of January in odd-numbered years. See *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146, 156; 665 NW2d 452 (2003) (reasoning that every provision of the Constitution "must be interpreted in the light of the document as a whole, and no provision should be construed to nullify or impair another"), citing *In re Probert*, 411 Mich 210, 232–233 n 17; 308 NW2d 773 (1981).

Turning first to when the Legislature can act, as defendants have argued, the end of a Legislature occurs every two years, as every two years the members of the House of Representatives are re-elected. Const 1963, art 4, § 3 (House members elected every two years). To establish the official last day of the session, the Constitution requires the Legislature to adopt a resolution declaring when the session ends, which cannot be later than the second Wednesday of January. Const 1963, art 4, § 13. And, once the two-year Legislature ends, it has no further power to work on bills or other unfinished business. See *id*. ("Any business, bill or joint resolution pending at the final adjournment of a regular session held in an odd numbered year shall carry over with the same status to the next regular session."), and *Blank v Dep't of Corrections*, 462 Mich 103, 148-149; 611 NW2d 530 (2000) (MARKMAN, J., concurring) (recognizing that the Legislature changes every two years). Although there is a carryover provision for business or bills pending at final adjournment in an odd-numbered year, there isn't a provision allowing unfinished business to carryover from an even-numbered year. Providing that the Legislature can continue business at the end of one calendar year, but not allowing it to do so at the end of another, should be treated as having a meaning. *League of Women Voters of Mich v Secretary of State*, 508 Mich 520, 584 n 32; 975 NW2d 840 (2022) (ZAHRA, J., concurring in part and dissenting in part) ("We must presume that when language is included in one provision but omitted in another, that omission is intentional; therefore, because the language in Article 12, § 2 expressly calls for legislative action regarding the manner of circulation and the same or similar language is absent from Article 2, § 9,

we must presume the Legislature lacks the authority to impose geographic restrictions on the manner of petition circulations for matters under Article 2, § 9.").

Consequently, the Constitution itself at least implicitly provides a deadline by which the Legislature's duty of presentment must be performed: 11:59 a.m. on the second Wednesday of January of every odd-numbered year. Const 1963, art 4, § 13 (providing that the new Legislature is to be sworn in at noon on the second Wednesday of January in the odd-numbered year).[1] And, importantly, Const 1963, art 4 § 33 explains what can occur if presentment occurs at the last minute of that final day, as the Governor can, after the legislative session has ended, either (1) sign the bill, which then becomes law, or (2) veto the bill, or take no action on it, by which the bill does not become law and the Legislature has no opportunity to override the veto or inaction. The *Wood* Court explained this process under the predecessor to Const 1963, art 4, § 33, which contained the same language:

> The Constitution grants to the Governor the power to veto any and every bill passed by the Legislature, except in the single instance of where the Legislature, by adjournment, prevents an essential of veto, return of the bill to the originating house. In the excepted instance, the Governor has a right or option similar to power of veto (which he may exercise by inaction), because the bill fails of passage unless he approves and signs it. This right is commonly called a 'pocket veto.' As a matter of fact, its effect to defeat a bill is greater than that of a veto, because the Legislature may pass a bill and make it law in spite of a veto, while the 'pocket veto' is final and the bill cannot be made law without being reintroduced, re-enacted, and approved by the executive or passed over his veto, as an original bill. [*Wood*, 255 Mich at 229.]

As the *Wood* Court explained, this "pocket veto" does not arise during temporary adjournments of the Legislature, but instead only comes into existence under Const 1963, art 4, § 33 when the Legislature adjourns at the end of the two-year legislative session. *Id*. at 232 ("The purpose and object as well as the language of the Constitution justifies and, in our opinion, requires the construction that it is only the adjournment without day of the Legislature which prevents return of a bill to the originating house and calls into operation the provision for 'pocket veto.' ").[2]

In light of these constitutional provisions, it seems apparent that the people themselves have created a deadline for legislative presentment of enrolled bills to the Governor, which is no later than 11:59 a.m. on the second Wednesday of January of odd-numbered years. And, when a

---

[1] It could be earlier if the Legislature by resolution declares an earlier end to the second legislative session.

[2] Based on this same understanding, the Attorney General advised Representative Griffin that an enrolled bill that was presented to the Governor at the end of the legislative session in an even-numbered year, which was subjected to a pocket veto, could "become law only by being re-introduced as an original bill, re-enacted, and either approved by the Governor or passed over a veto made by the Governor while the Legislature is still in session." OAG, 1989-1990, No. 6629, p 326 at 328 (April 27, 1990).

bill is presented at the very end of the legislative term, the people protected the Governor's right to either sign or veto the enrolled bill. Although these provisions prevent the Legislature from overriding an actual veto that occurs after the end of a two-year legislative session (which only results from the Legislature's choice to present the bill at such a late date), they preserve the Governor's right to veto all bills passed by the Legislature. *Wood*, 255 Mich at 229 ("The Constitution grants to the Governor the power to veto any and every bill passed by the Legislature . . . .").

In *Nate v Denney*, 166 Idaho 801, 808; 464 P3d 287 (2017), the Idaho Supreme Court recognized the protections afforded the governor's right to veto all legislation under similar provisions of the Idaho constitution:

> When a bill is presented to the governor and when the legislature adjourns *sine die* are both within the sole control of the legislature. If the legislature could present a bill to the governor after adjournment, it could infringe upon the governor's right to veto the bill by presenting it to him more than ten days after adjournment.
>
> In summary, Article IV, section 10, of the Constitution clearly and necessarily prohibits the legislature from presenting bills to the governor after the legislature has adjourned sine die. It requires that bills must be presented to the governor while the legislature is still in session. That is the only logical interpretation of the section.[3]

As in *Denney*, here, Const 1963, art 4, § 33 lays out a process for presentment and vetoes: presentment commences the time period for the Governor to consider, and either accept or reject, an enrolled bill, and lays out what occurs if she does not approve that bill and the Legislature either "continues" the legislative session or the Legislature "within that time finally adjourned the session at which the bill was passed." Both of these scenarios involve the Legislature making the presentment prior to the end of the final legislative session, meaning either the date and time set forth in the concurrent legislative resolution adjourning the two-year session sine die, Const 1963, art 4, § 13, or no later than 11:59 a.m. of the second Wednesday of January in every odd-numbered year.[4]

Of course, this time for presentment is long past for the enrolled bills at issue, which itself presents a difficult dilemma. For, if on remand the trial court orders the *current* legislature to

---

[3] Art IV, § 10 of the Idaho Constitution is similar to the process in Const 1963, art 4, § 33, though the time frames differ as do some immaterial provisions.

[4] It is true that some courts have held that there is no expiration on the duty of presentment, and the mere adjournment of a legislative session is not a bar to the duty to present. See, e.g., *United States v Kapsalis*, 214 F2d 677, 679-680 (CA 7, 1954), and *Opinion of the Justices*, 106 NH 402, 404-405; 213 A2d 415 (1965). But here, this is not simply an adjournment of short duration, as for a holiday break, but is instead the adjournment sine die in an even-numbered year, ending this particular legislative body. And that is significant, because the Michigan Constitution's procedures for passing and presenting legislation require the Legislature to be in session.

present the at-issue bills passed by a *prior* legislature, does that mean that the current Legislature can override any veto of that legislation, which again, was passed by a different Legislature? Or even more fundamentally, can the Governor exercise her constitutional veto power? Because, under § 33, a veto needs to be done during the session of the prior Legislature, as it states that, "If he disapproves, *and* the legislature *continues the session at which the bill was passed*," the veto power can be exercised. Const 1963, art 4, § 33 (emphasis added). But here, the Legislature that passed these bills has not continued in session, which places into question whether the Governor's veto power kicks in. And, with respect to the pocket veto, § 33 states that if the Governor "does not approve, and the legislature *has within that time* finally adjourned the session at which the bill was passed, it shall not become law." Const 1963, art 4, § 33 (emphasis added). "Within that time," of course, means the 14 days since presentment, which if presentment is ordered to occur now, it would be occurring well *after* the prior Legislature adjourned, not "within that time." Again, because this constitutional time has passed, it is questionable whether the Governor has the power to veto or to pocket veto these bills under § 33.

In the end, the Constitution provides the answer to the question of whether and when presentment must occur. But because those time frames have passed, and imposing any time frames now would be inconsistent with the provisions of Const 1963, art 4, § § 3, 13, and 33, there is no remedy that the trial court can constitutionally impose. See e.g., *Nixon v Fitzgerald*, 457 US 731, 754 n 37; 102 S Ct 2690; 73 L Ed 2d 349 (1982); *Webster v Doe*, 486 US 592, 613; 108 S Ct 2047; 100 L Ed 2d 632 (1988) (SCALIA, J., dissenting) ("[I]t is simply untenable that there must be a judicial remedy for every constitutional violation.").

/s/ Christopher M. Murray