RICHEY v. MONROE COUNTY BOARD OF EDUCATION.

1. JURY—DEMAND—QUO WARRANTO.
    Trial court was not in error in refusing a jury trial in quo warranto proceeding, where demand for jury was not made within 15 days after the cause was first at issue as required by court rule (Court Rule No 33, § 1 [1945]).

2. ELECTIONS—CONSTRUCTION OF STATUTES AS DIRECTORY.
    Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result.

3. SAME—CONSTRUCTION OF STATUTES.
    A statute giving directions as to the mode and manner of conducting elections will be construed as mandatory if direct pro-

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur, Quo Warranto § 115.
[2–4] 18 Am Jur, Elections § 206.
[6, 7] 47 Am Jur, Schools §§ 16, 23.
[7] 44 Am Jur, Quo Warranto § 131.

ceedings are brought for its enforcement, but after election it should be held directory, in support of the result, unless (1) of a character to effect an obstruction to the free and intelligent casting of the vote, or (2) prevents the ascertainment of the result, or (3) unless the provisions affect an essential element of the election, or (4) it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission will render it void.

4. SAME—SCHOOL ELECTIONS—CONSOLIDATION OF DISTRICTS—CONSTRUCTION OF STATUTES.

School election statutes prescribing time within which various steps in connection with holding of the election should be performed are construed as directory, not mandatory, where it appears that all statutory requirements were met as soon as they conveniently could have been done in connection with vote on consolidation of school districts into 1 rural agricultural district, some delay having been necessitated by virtue of another consolidation election embracing some of the same districts (CL 1948 and CLS 1954, § 345.1 *et seq.*).

5. SCHOOLS AND SCHOOL DISTRICTS—CONSOLIDATION PROCEEDINGS—PETITION—SIGNATURES.

Claims that certain signatures to petition for consolidation of school districts were obtained on Sunday, that some were not taken by the circulator who certified the genuineness of the signatures, that a husband signed for his wife and vice versa, that some signatures were not made in the presence of the circulator, and that some of the circulators failed to sign the petition in the presence of the notary public who took the acknowledgment *held*, without sufficient merit to invalidate the petition, assuming all claims were true, where there still remained sufficient valid signatures on the petition.

6. SAME—PETITION FOR CONSOLIDATION—SIGNATURES ON ANOTHER PETITION.

Petition for consolidation was not void because it contained many signatures common to another petition which sought a separate consolidation embracing some of the same school districts, as the statute does not prohibit the signing of petitions for more than 1 consolidation and the other consolidation was defeated by the electors prior to the time the instant petition was approved by the superintendent of public instruction (CL 1948 and CLS 1954, § 345.1 *et seq.*).

7: QUO WARRANTO—APPEAL AND ERROR—QUESTIONS REVIEWABLE—
. PARTIES.

> Whether or not quo warranto petition was fatally defective, as
> held by trial judge, for failure to join consolidated school
> district, the validity of existence of which was challenged,
> is not determined on appeal, where case is decided on the merits
> and order dismissing petition for quo warranto is affirmed.

Appeal from Monroe; Golden (Clayton C.), J..
Submitted January 23, 1956. (Docket No. 88, Cal-
endar No. 46,620.) Decided June 4, 1956.

Quo warranto by Charles E. Richey and other citi-
zens and taxpayers against Board of Education of
County of Monroe, a corporation, Isaac Grove, Coun-
ty Superintendent of Schools, the Township of
Whiteford and various of its officials to test validity
of school election establishing a rural agricultural
school district. Judgment for defendants and peti-
tion dismissed. Plaintiffs appeal. Affirmed.

*Aloysius B. O'Mara,* for plaintiffs.

*Weipert & Weipert,* for defendants.

SHARPE, J. This is a proceeding in the nature of
quo warranto to test the validity of a school election
held in Whiteford township hall on October 1, 1954.
The purpose of the election was to vote upon the
proposition of consolidating 7 school districts in
Whiteford township, Monroe county, 1 partially in
Whiteford township and partially in Summerfield
township, Monroe county, and 2 rural school dis-
tricts in Riga township, Lenawee county, into a rural
agricultural school district under chapter 5 of part
1 of the school code, being CL 1948 and CLS 1954,
§ 345.1 *et seq.* (Stat Ann 1953 Rev § 15.92 *et seq.*).

The result of the vote was 891 for consolidation; 253 against consolidation; 20 spoiled votes, and 2 votes lost. On October 30, 1954, the circuit court of Monroe county issued an order granting plaintiffs leave to file a petition in the nature of quo warranto. On the same day a petition was filed in which it was alleged that plaintiffs are residents and taxpayers of Riga township, Lenawee county; that between April 1, 1954, and October 1, 1954, in Whiteford township, Monroe county, and Riga township, Lenawee county, fraud and error was committed in the circulation of petitions for a special election as follows: So-called Whiteford petitions were circulated on or about July 15, 1954, requesting the calling of a special election to vote on the consolidation of the 8 Monroe county districts and Tripp School District No 2 and Warren (Manwarren) School District No 7, located in Lenawee county, Michigan, into a rural agricultural school district. The printed petition stated the proposition to be:

"Shall a rural agricultural school be established by uniting all of the territory of the following districts into 1 rural agricultural school district?"

On or about March 18, 1954, so-called first Blissfield-Deerfield petitions were circulated in 33 school districts, 5 of which were common to the proposed so-called Whiteford consolidation, viz: Tripp No 2, Warren No 7 in Lenawee county; Ferris No 4, Modern Fractional No 9F, and Stone Quarry No 1, in Monroe county. The printed petition herein stated the proposition to be:

"Shall a rural agricultural school be established by uniting all of the territory of the following districts into 1 rural agricultural school district?"

On April 2, 1954, so-called Whiteford petitions were filed with Isaac Grove, county superintendent

of schools for Monroe county, Michigan, and such petitions were certified to Clair Taylor, superintendent of public instruction for the State of Michigan on May 13, 1954, although he had been previously notified of such petitions on approximately May 10, 1954.

Approximately June 1, 1954, the so-called Blissfield-Deerfield petitions were presented to Milton C. Porter, county superintendent of schools for Lenawee county, Michigan, and such petitions were certified to Clair Taylor on June 28, 1954. On approximately July 9, 1954, Clair Taylor authorized the Blissfield-Deerfield election after deleting Stone Quarry No 1, Ferris No 4 and Modern Fractional No 9F. Thereupon, on July 21, 1954, Clair Taylor authorized the reattachment of the aforementioned school districts Nos 1, 4 and 9F, and the election was conducted on August 23, 1954. This election failed to obtain the required number of votes for consolidation.

The following day, August 24, 1954, Isaac Grove directed a letter to Clair Taylor, again "certifying" the so-called Whiteford petitions, which had been circulated almost 6 months previously, and filed with him April 2, 1954. The same day Ferris No 4 and Modern No 9F directed a telegram to Clair Taylor expressing their desire to withdraw and not be included in any so-called Whiteford election. On August 30, 1954, Tripp No 2 and Warren No 7 sent a comunication to Clair Taylor and did personally on September 8, 1954, protest to Mr. Taylor their inclusion in the Whiteford consolidation plan.

The following chart prepared by plaintiffs shows the signature irregularities they claim on the Whiteford petition:

| | "Riga 2 | Riga 7 | Whit. 1 | Whit. 4 | Whit. 9F |
|---|---|---|---|---|---|
| "Registered electors in the school district township clerk certified ... .. ...... | 54 | 52 | 64 | 120 | 30 |
| "No of petition signers | 47 | 54 | 51 | 61 | 21 |
| "Signatures common to Blissfield - Deerfield and Whiteford petitions . . .... .... | 13 | 20 | 17 | 33 | 6 |
| "Instances where husband signed for wife or wife signed for husband or one person signed for another ...... ...... | | | 4 | | 18 |
| "Instances where petition not signed in presence of the circulator . .... ... | | 1 | | | 4 |
| "Circulators who failed to sign petition in the presence of notary who took acknowledgment ..... | | 2 | | | |
| "Sunday signatures acknowledged by signer ................ | 2 | 5" | | | |

Following the filing of the information in the nature of quo warranto, defendants filed a motion to dismiss the information for the following reasons:

"The plaintiffs have failed to name a necessary and indispensable party defendant, namely the Whiteford Township Rural Agricultural School District, being the school district which came into legal existence at the October 1, 1954 election of which plaintiffs complain. Without and in the absence of said school district as a party to this suit, its right to corporate existence cannot be determined and quo warranto is not maintainable. * * *

"Plaintiffs' information in the nature of quo warranto fails to state a cause of action against these defendants, or any of them, and fails to state facts

sufficient to maintain quo warranto against these defendants, either jointly or severally. It appears on the face of said information that the same is devoid of legal merit, and that the allegations therein, even if true, do not affect the validity of the election complained of therein.

"A. Plaintiffs' information does not deny that the petitions on which said election was called were signed by over 50% of the qualified electors of each rural school district involved, as required by CLS 1954, § 345.3 (Stat Ann 1953 Rev § 15.94). In paragraph 17, plaintiffs admit that said petitions were presented to the defendants Monroe county board of education and Isaac Grove, Monroe county superintendent of schools, as required by said statute, and were affirmatively found 'to be in compliance with the governing statutes, both as to form and substance.' Plaintiffs fail to plead facts controverting the correctness of such finding. * * *

"B. Plaintiffs' allegation in paragraph 14 of said information that certain signatures were affixed to said petitions on Sundays, or were not signed in the presence of the circulators thereof, is insufficient, (1) in that plaintiffs do not claim that such signatures, even if deleted, would reduce the petitions to below the statutory percentage; and (2) in that the validity and bona fide character of said signatures and the fact that such signers met the statutory qualifications as to residence and otherwise is not controverted; and (3) in that the notarized statements attached to said petitions, identifying the signatures as those of qualified electors, are not attacked, controverted, denied or questioned; and (4) in that the governing statute contains no such requirements as plaintiffs claim. * * *

"C. Plaintiffs' allegation in paragraphs 11 and 12 of said information, that certain of the signers (unnamed and unnumbered by plaintiffs) to said initiative Whiteford petitions also signed a so-called Blissfield-Deerfield petition, presents no justiciable question to the Court, and is insufficient to state a

cause of action or to cause said petitions to be questioned in quo warranto proceedings, because

"(1) plaintiffs do not question or controvert the validity and bona fide character of said signatures, and the fact that such signers met all statutory requirements;

"(2) plaintiffs do not claim that such signatures, even if deleted, would reduce the petitions to below the statutory percentage, and do not state facts controverting the notarized statements attached to said petitions and the findings of defendants Monroe county board of education and Isaac Grove that said petitions met the statutory requirements."

On January 25, 1955, the trial court denied defendants' motion to dismiss, holding that plaintiffs' petition presented questions of fact for a determination on a hearing of the merits of the cause. On April 2, 1955, plaintiffs gave notice of a demand for a jury trial. The trial court denied plaintiffs' demand for a jury trial for the reason that it would delay decision in the matter. The cause came on for trial and at its conclusion the trial court entered a judgment, in part, as follows:

"It is further ordered and adjudged that the election in question and the actions of the defendants produced and effected a legally constituted rural agricultural school district, and that the petition and information in the nature of quo warranto should be and hereby are dismissed, with prejudice."

On April 27, 1955, the trial court filed an opinion in which he stated:

"A hearing on the merits was had on this petition, and certain alleged material error, material fraud was presented in evidence, which both affirmed and denied the existence of such material fraud and material error. Petitioner has insisted throughout that the number of signers on the respective petitions was insufficient for certain grounds; one of these grounds

is that certain of the signers had affixed their signature on Sunday. The court is of the very definite opinion that under the law as it exists in this State a Sunday's signature on the particular petitions authorized by this act is a perfectly valid signature.

"Petitioner further alleges that because of the fact that certain of the signers on the Whiteford petitions also signed another school consolidation petition, that that fact *ipso facto* voided the signature upon the Whiteford petition. The statute under which the petitions are filed makes no such findings, nor is the court advised of any existing law in the State of Michigan that would have that effect.

"Petitioner further urges that every signature upon any of these petitions where the physical act of writing was not done by the person whose name there appears is a void signature. With that position the court does not agree.

"Petitioners also urge that the election was improperly called and that such improper calling was of such a nature as to vitiate and completely void the election that followed. that proposal being based upon the fact that the school commissioner did not call an election within 20 days after the receipt of the signed petitions by him. It is the opinion of the court that the provision for the time for calling the election, as viewed with the rest of the same statute and the other provisions in the same statute, must be regarded as a directory provision, and that the conclusion placed thereon by the petitioners is not sustainable as a matter of law.

"The court does not think it is necessary to go into detail on each of the various phases urged by the petitioners in here, and denied or urged by the defendants, but the court does say that the petition in the nature of quo warranto is improperly filed as not naming a necessary party; that the petition as filed, and the proof as subsequently presented in this court does not, in the opinion of the court, show such material fraud and error in the election as would vitiate it. It is the general rule of law, and with that gen-

eral rule Michigan is thoroughly in accord, that the presumptions are with the legality of a held election; and it is also the general law, and with that general law the laws of the State of Michigan thoroughly conform, that mere irregularities will not vitiate an election, and the court will have no authority on mere irregularities to determine that the election so held was void."

Plaintiffs appeal and urge that the trial court was in error in refusing them a jury trial. The record shows that the petition for quo warranto was filed October 30, 1954; that an answer was filed February 24, 1955, and a request for a jury trial was made April 2, 1955. Michigan Court Rule No 33, § 1 (1945), requires that demand for a jury be made not later than 15 days after the cause is first at issue. In the case at bar the cause was at issue on February 24, 1955. The demand for a jury was not made within 15 days as required by the rule. The trial court was not in error in refusing a jury trial, see Basmajian v. City of Detroit, 256 Mich 539.

Plaintiffs also urge that the petition for consolidation is void because of the individual or cumulative effect of various irregularities, in that it was filed almost 6 months prior to the holding of the election. The law in effect at the time the petition was filed directs the county superintendent of schools to refer to the superintendent of public instruction for his opinion as to the advisability of uniting all of said territory into 1 rural agricultural school district. "The superintendent of public instruction shall have authority to confirm  *  *  *  or he may require that 1 or more of such districts be not included.  *  *  * His action in the matter shall be final." (CLS 1954, § 345.9 [Stat Ann 1953 Rev § 15.100].) Where 2 counties are involved as here, reach agreement between the county superintendents as to which shall call the election, or, if they cannot agree, the State

superintendent shall designate one (CL 1948, § 345.6 [Stat Ann 1953 Rev § 15.97] ); prepare and have printed the necessary ballots, and designate place of election (CL 1948, § 345.8 [Stat Ann 1953 Rev §15.99]); post election notices not less than 20 days prior to the time of holding (CL 1948, § 345.5 [Stat Ann 1953 Rev § 15.96] ).

. In the case at bar, Superintendent Grove on the very afternoon the petitions were filed with him wrote to the 3 township clerks involved to obtain certification of the number of registered voters. Upon obtaining the certificates and checking the petitions to ascertain their sufficiency, he promptly called a meeting of the Monroe county board of education, certified the petitions to the State superintendent, and asked for approval of the calling of the election all as required by the state. Mr. Grove and the Monroe county board of education wrote to Superintendent of Public Instruction Clair Taylor a total of 3 times, to speed up as much as possible the approval of the Whiteford election. When the letter of approval, directing the calling of the election, was received from Mr. Taylor, the Monroe county superintendent called a meeting of the Monroe county board of education within 2 days from receipt of such letter of approval, at which the time and place of the election was set and the ballots approved. The superintendent of public instruction saw fit to withhold approval of the Whiteford election until after an election had been held on the Deerfield-Blissfield petitions, involving another consolidation having some districts in common.

In *Carnes* v. *Livingston County Board of Education,* 341 Mich 600, 606, we quoted from 20 CJ, Elections, pp 181, 182, § 223, as was quoted with approval in *Attorney General, ex rel. Miller,* v. *Miller,* 266 Mich 127, 133 (106 ALR 387), as follows:

" 'Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result. * * * Before election it is mandatory if direct proceedings for its enforcement are brought, but after election it should be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential element of the election, or it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission will render it void.' "

In the case at bar all statutory requirements were met as soon as they conveniently could have been done. We hold that such statutory requirements are directory and not mandatory.

It is also urged that the petition contained some Sunday signatures which should have been deleted. Plaintiffs show that there were 7 so-called Sunday signatures. It is apparent that if all Sunday signatures were deleted there would remain 1,012 signatures to the petition.

Regardless of the validity of the Sunday signatures, there remained more than a sufficient number of signatures to initiate the process of consolidation.

It is also urged that the petition is void because it contained many signatures common to the first Blissfield-Deerfield petition which sought a separate consolidation.

The statute does not prohibit the signing of petitions for more than 1 consolidation. Moreover, it appears that the Blissfield-Deerfield petition for consolidation was defeated by the electors prior to the time the Whiteford petition was approved by the superintendent of public instruction. This claim for reversal has no merit.

It is next urged that the petition is void because some signatures were not taken by the circulator who certified to the genuineness of the signatures.

We note that plaintiffs claim 22 instances where a husband signed for his wife or the wife signed for the husband; 5 instances where the petition was not signed in the presence of the circulator; 2 instances where the circulator failed to sign the petition in the presence of a notary public who took the acknowledgment. Assuming that such signatures were illegal there still remain sufficient valid signatures on the petition. There is no merit to this claim.

The trial court also held that the quo warranto petition was fatally defective in that it failed to join the Whiteford Rural Agricultural School District as a party defendant. We do not find it necessary to pass upon this issue, as we prefer to decide this case upon the merits.

The judgment of the trial court is affirmed, with costs.

DETHMERS, C. J., and SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.