UNISYS CORPORATION v COMMISSIONER OF INSURANCE

Docket No. 211418. Submitted July 8, 1999, at Lansing. Decided August 3, 1999, at 9:20 A.M.

Unisys Corporation and CoreStates Bank, N.A., brought an action in the Ingham Circuit Court against the Commissioner of Insurance and the Michigan Life and Health Insurance Guaranty Association, seeking a declaration that the Michigan Life and Health Insurance Guaranty Association Act, MCL 500.7701 *et seq.*; MSA 24.17701 *et seq.*, provides coverage for losses incurred by certain Michigan residents and participants in Unisys defined-contribution pension plans as a result of the insolvency of Executive Life Insurance Company, from whom one of CoreStates' predecessors as trustee of the pension plan had purchased annuity contracts. On cross motions for summary disposition, the court, Carolyn Stell, J., granted summary disposition for the commissioner and the association. Unisys and CoreStates appealed.

The Court of Appeals *held*:

1. Subsection 7704(1)(b)(i) of the act, which states that the act provides coverage to Michigan residents who are holders of unallocated annuity contracts, does not apply to this case. It is not disputed that, at the time Executive Life was declared insolvent, CoreStates was not a resident of Michigan. The trial court correctly determined that the annuity contracts in this case were unallocated annuity contracts. Subsection 7705(n) of the act defines "unallocated annuity contract" to mean "an annuity contract or group annuity certificate that is not issued to and owned by an individual, except to the extent of an annuity benefit guaranteed to an individual by an insurer under the contract or certificate. The term shall also include, but not be limited to, guaranteed investment contracts . . . ." Here, the annuity contracts were not issued to or owned by an individual and were identified in the agreement executed between Unisys and Executive Life as "guaranteed interest contracts" or "group annuity contracts," and in the prospectus issued by Unisys to plan participants as "guaranteed investment contracts."

2. Because CoreStates, as contract holder, was not entitled to coverage under subsection 7401(1)(b)(i), the plan participants are

not entitled to coverage under subsection 7704(1)(a) as "the beneficiary, assignee, or payee of a person covered under subsection (b)."

Affirmed.

Insurance — Michigan Life and Health Insurance Guaranty Association Act — Unallocated Annuity Contracts.

"Unallocated annuity contract," for purposes of the Michigan Life and Health Insurance Guaranty Association Act, means an annuity contract or group annuity certificate that is not issued to and owned by an individual, except to the extent of an annuity benefit guaranteed to an individual by an insurer under the contract or certificate; the exception applies only to those annuity benefits that have been withdrawn from the fund, at the direction of the plan trustee, and allocated for the purchase of a separate individual annuity contract (MCL 500.7705[n]; MSA 24.17705[n]).

*Knaggs, Harter, King & Brake, P.C.* (by *David R. Brake*), and *Pepper Hamilton LLP* (by *Laurence Z. Shiekman* and *John Hyle*), for Unisys Corporation and Corestates Bank, N.A.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Larry F. Brya*, Assistant Attorney General, for Insurance Commissioner.

*Colpean & Associates* (by *John C. Colpean* and *Patricia M. McBain*), for Michigan Life and Health Insurance Guaranty Association.

Before: Holbrook, Jr., P.J., and O'Connell and Zahra, JJ.

O'Connell, J. Plaintiffs Unisys Corporation and CoreStates Bank, N.A., brought this declaratory judgment action on behalf of Michigan residents who participated in the Unisys Savings Plan and the Unisys Retirement Investment Plan, seeking recovery under the Michigan Life and Health Insurance Guaranty Association Act, MCL 500.7701 *et seq.*; MSA 24.17701

*et seq.*, for losses arising from the insolvency of Executive Life Insurance Company (ELIC), from which four annuity contracts had been purchased. The trial court granted summary disposition, pursuant to MCR 2.116(C)(10), in favor of defendants Commissioner of Insurance and Michigan Life and Health Insurance Guaranty Association (IGA). Plaintiffs appeal as of right, and we affirm.

Unisys provided the Unisys Savings Plan and the Unisys Retirement Investment Plan as defined-contribution pension plans for its employees, who were allowed to allocate their contributions among available investment funds. In 1987 and 1988, Northern Trust Company, an Illinois resident and trustee of the plans, purchased four group annuity contracts from ELIC. These contracts specifically identified the owner of the contracts as the trustee of the plans—Northern Trust Company. On September 1, 1990, Mellon Bank succeeded Northern Trust Company as trustee of the plans, and Mellon Bank was in turn succeeded as trustee by CoreStates Bank on January 1, 1994. Mellon Bank and CoreStates Bank were both residents of Pennsylvania.

In 1991, ELIC was placed in conservation by the California Insurance Commissioner, and subsequently declared insolvent and liquidated by order of the California Superior Court. At that time, over 2,000 Michigan residents were participants in the Unisys plans that included the ELIC contracts. A rehabilitation plan approved by the California Superior Court offered the trustee of the Unisys plans a choice of either a restructured contract or a share of the liquidated assets of ELIC. The plans' trustee at that time elected to receive a share of ELIC's liquidated assets. Thereaf-

ter, over $165 million was distributed among plan participants, constituting approximately 94.03 percent of total participant balances in the plans.

Unisys then demanded that the IGA cover the participants' uncompensated losses of more than $200,000 in principal and $1.475 million in interest. After the IGA denied coverage, plaintiffs brought this action, seeking a declaratory judgment that the IGA was required to provide coverage. On cross motions for summary disposition, the trial court held that coverage was not provided under the act, and granted summary disposition in favor of defendants. This appeal ensued.

We review de novo a trial court's denial or grant of summary disposition in a declaratory judgment action. *Stajos v Lansing*, 221 Mich App 223, 226; 561 NW2d 116 (1997); *Wills v State Farm Ins Co*, 222 Mich App 110, 114; 564 NW2d 488 (1997). When reviewing an order of summary disposition under MCR 2.116(C)(10), we must consider the available pleadings, affidavits, depositions, and other documentary evidence in a light most favorable to the nonmoving party and determine whether the moving party was entitled to judgment as a matter of law. *Marx v Dep't of Commerce*, 220 Mich App 66, 70; 558 NW2d 460 (1996).

The Michigan Life and Health Insurance Guaranty Association Act is designed to protect specified persons "against failure in the performance of contractual obligations under [specified] insurance policies and annuity contracts . . . because of the impairment or insolvency of the insurer issuing the policies or contracts." MCL 500.7702(1); MSA 24.17702(1). Cov-

erage under the act is set forth in § 7704, which provides in part:

(1) This chapter shall provide coverage for the policies specified in subsection (2) to the following persons:

(a) To a person, other than nonresident certificate holders under group policies or contracts, who, regardless of where he or she resides, is the beneficiary, assignee, or payee of a person covered under subdivision (b).

(b) To a person who is an owner of, or certificate holder under, a policy or contract described in subsection (2), or, in the case of an unallocated annuity contract, to the person who is the contract holder, and which owner, certificate holder, or contract holder is 1 of the following:

(i) A resident.

(ii) Not a resident, if all of the following conditions are met:

(A) The insurer that issued the policy or contract is domiciled in this state.

(B) The insurer never held a license or certificate of authority in the states in which the person resides.

(C) Such states have associations similar to the association created by this chapter.

(D) The person is not eligible for coverage by those associations.

(iii) Not a resident, if both of the following conditions are met:

(A) The person was a resident at the time the coverage was obtained by the person.

(B) The person is not eligible for coverage by another guaranty association.

(2) Except as provided in subsection (3), this chapter provides coverage to a person specified in subsection (1) for direct, nongroup life, health, annuity, and supplemental policies or contracts, for certificates under direct group life, health, annuity, and supplemental policies and contracts, and for unallocated annuity contracts issued by member insurers, except as limited by this chapter. [MCL 500.7704; MSA 24.17704.]

Here, the trial court held that coverage was properly denied under subsection 7704(1)(b) on the basis that the four contracts purchased from ELIC were "unallocated annuity contracts," and that the contract holders—CoreStates Bank and its predecessors—were not residents of Michigan.[1] We agree.

"Unallocated annuity contract" is defined in subsection 7705(n) of the act to mean

> an annuity contract or group annuity certificate that is not issued to and owned by an individual, except to the extent of an annuity benefit guaranteed to an individual by an insurer under the contract or certificate. The term shall also include, but not be limited to, guaranteed investment contracts, deposit administration contracts, and contracts qualified under Section 403(b) of the internal revenue code. [MCL 500.7705(n); MSA 24.17705(n).]

When statutory language is clear and unambiguous, judicial construction is not permitted. *Meyers Moving & Storage v Michigan Life & Health Ins Guaranty Ass'n*, 222 Mich App 675, 681-682; 566 NW2d 632 (1997). Here, the ELIC contracts fit squarely within the unambiguous statutory definition of unallocated annuity contracts, given that they were not issued to or owned by an individual and were identified in the commitment agreement executed between Unisys and ELIC as "guaranteed interest contracts" or "group annuity contracts," and in the prospectus issued by Unisys to plan participants as "guaranteed investment contracts."[2]

---

[1] The parties do not dispute that neither CoreStates Bank nor its predecessors would satisfy the nonresident provisions for coverage under subsection 7704(1)(b)(ii) or (iii).

[2] Unisys referred to the contracts as unallocated annuities in its tax returns.

Our holding is consistent with decisions from other jurisdictions whose state statutory guaranty associations define unallocated annuity contracts similarly to subsection 7705(n). See, e.g., *Unisys Corp v Texas Life, Accident, Health & Hospital Service Ins Guaranty Ass'n,* 943 SW2d 133 (Tex App, 1997) (unallocated annuity contracts issued by ELIC and held by nonresident trustees were excluded from coverage under Texas statute); *Oklahoma Life & Health Ins Guaranty Ass'n v Hilti Retirement Savings Plan,* 939 P2d 1110, 1112 (Okla, 1997) (unallocated annuity contracts issued by ELIC were excluded from coverage under Oklahoma statute); *Unisys Corp v California Life & Health Ins Guarantee Ass'n,* 63 Cal App 4th 634, 638; 74 Cal Rptr 2d 106 (1998) (guaranteed investment contracts issued by ELIC were excluded from coverage under California statute). See also *Honeywell, Inc v Minnesota Life & Health Ins Guaranty Ass'n,* 518 NW2d 557, 561 (Minn, 1994) (unallocated annuity contracts were covered under Minnesota statute only if the owner was a resident, and contracts issued by ELIC were covered because the plan trustee and contract owner was a resident). Conversely, plaintiffs' reliance on cases from jurisdictions such as Arizona,[3] Indiana,[4] and Penn-

---

[3] *Arizona Life & Disability Ins Guaranty Fund v Honeywell, Inc,* 190 Ariz 84, 92; 945 P2d 805 (1997) (contracts issued by ELIC were "annuities" as defined by the Arizona statute and were "issued to" retirement plan participants, who were the equitable owners of the contracts, even though the plan trustee was the legal owner).

[4] *Bennett v Indiana Life & Health Ins Guaranty Ass'n,* 688 NE2d 171, 178 (Ind App, 1997) (plan participants in ELIC contracts were held to satisfy the statutory requirement of ownership so as to constitute equitable owners, but the court noted that it would not read into the Indiana statute the restriction found in other states' statutes that excluded from coverage any contract that was not both issued to and owned by an individual).

sylvania,[5] whose statutes do not specifically define unallocated annuity contracts, is misplaced.

Plaintiffs assert that, because the act must be liberally construed to effectuate its purposes, see subsection 7702(2), MCL 500.7702(2); MSA 24.17702(2), and because the plan participants exercised significant control over their individual investment accounts, they should be regarded as the equitable or beneficial "owners" of allocated, not unallocated, annuity contracts so as to trigger coverage under subsection 7704(1)(b). We reject this argument. First, viewing the specific contracts at issue in tandem with the plain language of subsection 7705(n), we are left with no doubt that the ELIC contracts constituted "unallocated annuity contracts," which by definition are "not issued to and owned by an individual, except to the extent of an annuity benefit guaranteed to an individual by an insurer under the contract . . . ." Contrary to plaintiffs' argument, this latter clause cannot be read to exclude from the definition of unallocated annuity contracts any contract that generally guarantees an annuity benefit to an individual. Instead, consistent with the language of the ELIC contracts, this statutory provision excepts from the definition of unallocated annuity contracts only those annuity benefits that have been withdrawn from the fund, at the direction of the plan trustee, and allocated for the purchase of a separate *individual* annuity contract. In accordance with the terms of the subject group annuity contracts, the new contract is owned by the participant-retiree

---

[5] *Unisys Corp v Pennsylvania Life & Health Ins Guaranty Ass'n*, 667 A2d 1199 (Pa Commw, 1995), aff'd 546 Pa 256; 684 A2d 546 (1996) (plan participants, as the equitable owners of the contracts, were covered under the Pennsylvania statute).

and ELIC is "discharged from all liability, to the extent of any withdrawal amount . . . ." Hence, to the extent that an individual participant had retired and funds were withdrawn to purchase a separate individual annuity contract, that individual contract owner may be entitled to coverage under the IGA. However, that is not the issue presently before us.

Second, the mere fact that plan participants may have exercised some measure of control over their individual accounts does not transform the participants into "owners" under the IGA, nor does it transform the ELIC contracts into allocated, rather than unallocated, annuity contracts. The exception language of subsection 7705(n) merely indicates an acknowledgment by the Legislature that a *group* annuity contract may incorporate certain aspects of *individual* control and benefit, yet remain *un*allocated. Hence, for purposes of coverage under the IGA, plan participants had no ownership interest in the ELIC contracts, beneficial or otherwise.

As a contract holder of an unallocated annuity contract pursuant to subsection 7704(1)(b), plaintiff CoreStates Bank is not entitled to coverage for losses incident to the insolvency of ELIC, given that neither CoreStates Bank nor its predecessors were residents of Michigan, and the nonresident provisions of subsection 7704(1)(b)(ii) or (iii) were inapplicable. Subsection 7705(1) of the act defines "resident" to mean

a person who resides in this state at the time a member insurer is determined to be an impaired or insolvent insurer and to whom contractual obligations are owed. A person shall be considered a resident of only 1 state, which in the case of a person other than a natural person, shall be its

principal place of business. [MCL 500.7705(1); MSA 24.17705(1).]

Here, it is not disputed that, at the time ELIC was determined to be insolvent, Michigan was not the principal place of business of either CoreStates Bank or its predecessors, and, therefore, the residency requirement of subsection 7704(1)(b) was not satisfied. Because CoreStates Bank, as contract holder, was not entitled to coverage under subsection 7704(1)(b), the plan participants are not entitled to coverage under subsection 7704(1)(a) as "the beneficiary, assignee, or payee of a person covered under subsection (b)."

In conclusion, because the contracts at issue fall squarely within this state's statutory definition of unallocated annuity contracts, and because the contract holders were not residents of this state, the trial court properly held that coverage under the IGA was precluded.

Affirmed.