*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF ROYAL OAK,

    Plaintiff-Appellant,

v

OAKLAND CARES COALITION,

    Defendant-Appellee.

FOR PUBLICATION
December 19, 2024
10:37 AM

No. 367522
Oakland Circuit Court
LC No. 2023-199921-AW

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

MARKEY, P.J. (*dissenting*).

Plaintiff, Charter Township of Royal Oak (the township), appeals by right the trial court's order granting summary disposition in favor of defendant, Oakland Cares Coalition (OCC), in this suit arising from a dispute over a ballot initiative concerning recreational marijuana establishments that was approved by township voters. Although I am naturally averse to declaring null and void a ballot initiative passed by the electorate, I conclude as a matter of law that the language of the ballot proposal was confusing and misleading, did not apprise the voters of the true, complete subject matter of the initiative or ordinance, was unclearly written, and created strong prejudice in favor of the proposal. Therefore, I would reverse the trial court's ruling and remand the case for entry of an order granting summary disposition to the township on its claims for declaratory relief. I also disagree with the majority that the township could not challenge the ballot proposal's language in an action filed after the election took place. Accordingly, I dissent.

## I. BACKGROUND

The origins of this case are discussed in a previous opinion issued by this Court in *Oakland Cares Coalition v Turner*, unpublished per curiam opinion of the Court of Appeals, issued September 1, 2021 (Docket No. 358304). The panel provided the following recitation of facts:

> For the upcoming election on November 2, 2021, plaintiff [OCC] seeks to have a proposal placed on the ballot pursuant to the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., which in 2018 decriminalized the use of marijuana for adults over the age of 21 and provided for the legal production and sale of marijuana. The MRTMA permits individuals to

-1-

petition for an ordinance regarding marijuana establishments: "[i]ndividuals may petition to initiate an ordinance to provide for the number of marihuana establishments allowed within a municipality or to completely prohibit marihuana establishments within a municipality . . . ." MCL 333.27956(1). Such initiative petitions are subject to MCL 168.488 and MCL 168.482, which address a petition's size, font, form, and contents.

Plaintiff timely submitted a petition to defendant [township clerk] to support ballot wording for certification to the county clerk under MCL 168.646a(2), which sets forth certain procedures for township clerks to certify voter-initiated ballot language to county clerks. The statutory deadlines assure that the local petitions are canvassed by the local clerks in a timely fashion that allows for certification to the county clerks for inclusion on the ballot. Petitions to place a local ballot question on the ballot must be filed with the clerk at least 14 days before the date the ballot wording must be certified to the local clerk. By 4:00 p.m. on the twelfth Tuesday before the election, the ballot wording of the ballot question must be certified to the proper local or county clerk. The local clerk is obliged to certify the ballot wording to the county clerk at least 82 days before the election. Here, the twelfth Tuesday before the November 2, 2021 election was Tuesday, August 10, 2021. Eighty-two days before the November 2021 election was Thursday, August 12, 2021. Fourteen days before August 10, 2021, was July 27, 2021.

On July 12, 2021, plaintiff filed its petition regarding the proposed ordinance with defendant. On July 20, 2021, defendant emailed plaintiff's attorney that the petition had sufficient signatures. Defendant then requested a legal opinion regarding whether the proposed ordinance violated the title-object clause of the 1963 Michigan Constitution. Counsel opined that the title did not adequately express the content of the proposed ordinance and the title and ordinance encompass more than one object. On July 26, 2021, defendant sent a second e-mail to plaintiff's counsel declining to certify the ballot wording on the basis that the proposed ordinance violated Article 4, § 24 of Michigan's 1963 Constitution.[1]

Plaintiff filed the instant suit for declaratory and mandamus relief in the circuit court on August 4, 2021, along with an ex parte motion for an order to show cause why a writ of mandamus should not issue. Plaintiff argued that defendant had a duty under MCL 168.646a(2) to timely certify the language of the proposed ballot question to the Oakland County Clerk. Plaintiff maintained that defendant, rather than certify the ballot wording, instead engaged in an ultra vires assessment of the legality of the proposed ordinance. On August 9, 2021, the circuit court granted the motion for show cause.

In her response in opposition to a writ of mandamus, defendant acknowledged that plaintiff had cited caselaw holding that substantive challenges

---

[1] "No law shall embrace more than one subject, which shall be expressed in its title. . . . ." Const 1963, art IV, § 24.

to a proposed initiative are improper until after the law is enacted. Defendant maintained, however, that the cited cases, which involved the Home Rule City Act (HRCA), MCL 117.1 et seq., did not apply to townships. Defendant maintained that MCL 168.646a certification requires clerks to review the legal sufficiency of the ballot wording. Defendant added that a clerk's duty to certify the wording becomes ministerial only after the clerk determines that the ballot wording is legally sufficient.

The court opined that MCL 168.646a requires clerks to do more than just simply count or verify the signatures, but also must determine the legal sufficiency of the ballot wording. The court concluded that the plain ordinary meaning of the language in MCL 168.646a(2) required a legal determination. The court agreed with defendant that the wording was legally insufficient under Article 4, § 24 of Michigan's 1963 Constitution. The title of the proposed ordinance did not adequately express the content as it identifies two objects, even though one of those objects is not further discussed in the proposed ordinance. The court also ruled that a clerk's duty is not ministerial until the clerk determines that the wording is legally sufficient. In line with that reasoning, the court decided that the clerk did not have a clear legal duty to certify the ballot wording, and denied plaintiff's request for mandamus. Plaintiff filed the instant application 14 days later. [*Oakland Cares Coalition*, unpub op at 1-3.]

This Court, in reversing the trial court, held that the township clerk "had a clear legal duty under MCL 168.646a to certify the ballot wording." *Id.* at 4. The panel additionally ruled "that a township clerk's attempt to declare that a ballot proposal is illegal before an election should not be countenanced." *Id.* at 5. The Court further noted that "the legal opinion obtained by defendant focused on the title and content of the proposed ordinance, not on the ballot wording[, which] . . . was error, as the only item for certification by defendant was the wording of the ballot question, as set forth in the clear language of MCL 168.646a(2)." *Id.* The *Turner* panel next found that certification of the ballot wording was ministerial and that the township clerk "was obliged to certify the ballot wording to the county clerk." *Id.* Finally, this Court ruled that plaintiff OCC had no available remedy other than mandamus; therefore, the plaintiff had demonstrated that it was "entitled to mandamus and the circuit court abused its discretion in refusing to issue the writ." *Id.* at 5-6. The defendant township clerk was "directed to immediately certify the ballot language to the county clerk." *Id.*

Subsequently, the ballot initiative was presented to and passed by the township's electorate in November 2022. The ballot proposal provided in full as follows:

The proposal, if adopted, would enact an ordinance to assist patients in need of medical marijuana for conditions such as epilepsy, multiple sclerosis, colitis, arthritis, Crohn's disease, cerebral palsy, chronic pain, Parkinson's disease, post-traumatic stress disorder and other critical medical conditions, and repeal the Township's prohibition of marijuana establishments. Shall this proposal be adopted?

Notwithstanding the clear, detailed language of the ballot proposal relating to medical use, the actual ordinance to be enacted pursuant to this approved ballot proposal authorized *recreational* marijuana establishments. The ordinance's introductory sentence states that "[t]he purpose of this Ordinance is to authorize and regulate within the Charter Township the business operations of persons licensed by the State to operate Marihuana Establishments consistent with the [MRTMA]." See *Cary Investments, LLC v Mount Pleasant*, 342 Mich App 304, 316 n 1; 994 NW2d 802 (2022) (the MRTMA "generally decriminalized recreational possession and use of marijuana for people 21 years of age or older and provided for the legal production and sale of marijuana").[2]

To give context to my discussion of the procedural events that occurred below and the parties' arguments, I quote MCL 168.485, which was the focus of the litigation and provides:

> A question submitted to the electors of this state or the electors of a subdivision of this state shall, to the extent that it will not confuse the electorate, be worded so that a "yes" vote will be a vote in favor of the subject matter of the proposal or issue and a "no" vote will be a vote against the subject matter of the proposal or issue. The question shall be worded so as to apprise the voters of the subject matter of the proposal or issue, but need not be legally precise. The question shall be clearly written using words that have a common everyday meaning to the general public. The language used shall not create prejudice for or against the issue or proposal.[3]

To provide additional context, I note that MCL 333.27956(1), referenced earlier in my quotation of *Turner*, provides, in relevant part:

> [A] municipality may completely prohibit or limit the number of marihuana establishments within its boundaries. Individuals may petition to initiate an ordinance to provide for the number of marihuana establishments allowed within a municipality or to completely prohibit marihuana establishments within a municipality, and such ordinance shall be submitted to the electors of the municipality at the next regular election when a petition is signed by qualified electors in the municipality in a number greater than 5% of the votes cast for governor by qualified electors in the municipality at the last gubernatorial election.

A "marihuana establishment" is statutorily defined under the MRTMA as "a marihuana grower, marihuana safety compliance facility, marihuana processor, marihuana microbusiness, marihuana retailer, marihuana secure transporter, or any other type of marihuana-related business licensed by the cannabis regulatory agency." MCL 333.27953(*l*).

---

[2] I will use the standard spelling of "marijuana," except when it is spelled differently within quoted language.

[3] The parties agreed that MCL 168.485 applied to the ballot proposal.

In April 2023, the township filed the instant action against OCC. In the complaint, the township, citing MCL 168.485 and seeking declaratory relief, alleged that the ballot proposal's language was prejudicial and misleading because the township did not have a prohibition against marijuana establishments[4] and because there were no references to recreational marijuana establishments in the language of the ballot proposal. The township noted that ballot initiatives that would have allowed recreational marijuana businesses failed in 2019 and 2020, with neither initiative garnering over 39 percent in favor of such businesses. The township also alleged that the ordinance's language infringed on the township's zoning authority to regulate the operation of marijuana facilities, thereby violating the Michigan Zoning and Enabling Act (MZEA), MCL 125.3101 *et seq.*

In lieu of filing an answer, OCC moved for summary disposition under MCR 2.116(C)(8) and (10). OCC argued that the ballot proposal's language was accurate and correctly described the township's prohibition against marijuana establishments. OCC claimed that the township was enforcing that prohibition in 2022. Next, OCC contended that the language of the ballot proposal complied with MCL 168.485. According to OCC, the ballot proposal's language was not prejudicial or misleading given that the patient population referenced in the proposal indisputably benefited from passage of the initiative. OCC maintained that the language correctly apprised voters of the subject matter of the initiative. All of the preceding arguments were made in support of OCC's assertion that it was entitled to summary disposition under MCR 2.116(C)(10). Finally, OCC asserted that the township failed to state a claim for purposes of MCR 2.116(C)(8) with respect to the alleged MZEA violation.

The trial court granted OCC's motion for summary disposition, concluding that the township did in fact have a prohibition against marihuana establishments, that the language of the ballot proposal was not prejudicial or misleading, that the title of the ballot proposal did not violate the Title-Object Clause, Const 1963, art 4, § 24,[5] and that the township failed to describe the statutory basis for its claim under the MZEA. The trial court reasoned that the term "marijuana establishment" was defined in the MRTMA and that under the definition, no marijuana establishments of a recreational nature were permitted under the township's ordinances. The trial court found that the township failed to present evidence showing that the ballot proposal's language was prejudicial or misleading. The court ruled that "the ballot initiative language was clearly written using words that have a common everyday meaning to the general public and did not create prejudice for or against the issue or proposal in accordance with MCL 168.485." The

---

[4] The Code of Ordinances, Charter Township of Royal Oak, Chapter 8 (Environment and Health), Article VI, Divisions 1 and 2, § 8-136 *et seq.*, authorized the operation of Medical-Marijuana Facilities in the township. Hereafter, I shall simply refer to this provision as the "RO Medical-Marijuana Ordinance."

[5] I note that the township's complaint did not allege a violation of the Title-Object Clause, but the township made an extremely cursory argument on the matter in its response to OCC's motion for summary disposition.

trial court summarily dismissed the township's claims regarding the language in the ballot proposal under MCR 2.116(C)(10) and summarily dismissed the MZEA claim under MCR 2.116(C)(8).

## II. ANALYSIS

On appeal, the township argues that there exists a genuine issue of material fact regarding whether the ballot proposal's language was prejudicial and not impartial in violation of MCL 168.485. The township also contends that it stated a valid claim for relief based on a violation of the MZEA.

We review de novo a trial court's ruling on a motion for summary disposition. *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022).[6] I note that this Court has also

---

[6] In *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506-507; 991 NW2d 230 (2022), this Court recited the principles that govern the analysis of a motion brought pursuant to MCR 2.116(C)(10):

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. Speculation is insufficient to create an issue of fact. A court may only consider substantively admissible evidence actually proffered by

-6-

stated that de novo review applies to a trial court's grant or denial of summary disposition in a declaratory judgment action. *Unisys Corp v Comm'r of Ins*, 236 Mich App 686, 689; 601 NW2d 155 (1999). We likewise review de novo issues of statutory construction. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).[7] "De novo review means that we review the legal issue independently, without required deference to the courts below." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

Proposed ballot language must be clearly written using words with common, everyday meanings as understood by the general public. MCL 168.485; see also *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 494; 688 NW2d 538 (2004). "Although the question of prejudice is generally a question of fact, . . . it is one of law for the court when only one conclusion can be drawn from the undisputed facts." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 448; 761 NW2d 846 (2008).

I conclude as a matter of law that the language of the ballot proposal was confusing and misleading, did not apprise the voters of the true, complete subject matter of the initiative or ordinance, was unclearly written, and created strong prejudice in favor of the proposal. See MCL

---

the parties when ruling on the motion. [Quotation marks, citations, and brackets omitted.]

I need not address MCR 2.116(C)(8) because it is unnecessary to reach the MZEA allegations under my analysis.

[7] With respect to the rules of statutory construction, this Court in *Slis v Michigan*, 332 Mich App 312, 335-336; 956 NW2d 569 (2020), observed:

This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.

Judicial construction of a statute is only permitted when statutory language is ambiguous. A statute is ambiguous when an irreconcilable conflict exists between statutory provisions or when a statute is equally susceptible to more than one meaning. When faced with two alternative reasonable interpretations of a word in a statute, we should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute. [Quotation marks and citations omitted.]

168.485. Indeed, in my view, the ballot proposal's language was outright deceptive.[8] In no form, fashion, or manner did the ballot proposal clearly indicate or suggest that a "yes" vote would authorize *recreational* marijuana establishments or businesses in the township. The language of the ballot proposal very clearly stated that its purpose was to assist persons with medical ailments and illnesses and to repeal the prohibition of marijuana establishments. This wording gave the false impression that (1) the ordinance did not pertain to healthy individuals who wished to patronize marijuana establishments purely for recreational purposes and that (2) the township had in place a prohibition against marijuana businesses, establishments, or facilities for individuals with debilitating medical conditions. As noted above, the RO Medical-Marijuana Ordinance authorized medical-marijuana facilities in the township. The drafters of the ballot proposal effectively and purposely created an impression that it only applied in the context of medical-marijuana usage and sales. An ordinary voter would not have read the ballot proposal and understood it to be a proposal to allow recreational marijuana establishments or businesses.

I fully recognize and appreciate that the term "marihuana establishment" has a particular meaning under the MRTMA, encompassing *recreational* marijuana establishments, which the township did effectively prohibit. But the average voter could not reasonably have been expected to know or be familiar with a statutory definition. It is highly likely that a person who was against permitting recreational marijuana establishments in the township but favored allowing medical-marijuana establishments would have voted in favor of the proposal without understanding that the initiative was actually designed in hopes of permitting recreational establishments. The language of the ballot proposal patently created prejudice in favor of the proposal, essentially imploring the electorate to sympathize with individuals battling adverse health conditions and give them an opportunity for healing through access to marijuana establishments. Under these facts, there is no genuine issue of material fact that the township is entitled to declaratory relief, MCR 2.116(I)(2); therefore, the trial court erred by granting summary disposition to OCC. In my view, the township is entitled to an order declaring the ballot initiative null and void.

The majority does not substantively analyze or answer the question whether the ballot language violated MCL 168.485, instead holding that the township was required to litigate the issue before the election and could not do so after the proposal was passed by the electorate, effectively rendering the township's lawsuit moot. I disagree. The majority asserts:

---

[8] For comparison's sake, the following is the ballot proposal that was rejected by township voters in May 2019:

> A proposed initiative ordinance to amend Article 8 of the Royal Oak Township ordinance to allow marihuana related businesses in Royal Oak Township. This proposal would authorize an unlimited number of marihuana related businesses to locate on parcels of the property within Royal Oak Township that are larger than five acres and that have been continuously unoccupied for at least five years. Should this proposal be adopted?

This ballot language provided the electorate with an accurate portrayal of the initiative's objective.

Even if we were to concede that the wording on the ballot was, at the very least, incomplete in accurately representing the essence of the ordinance, it is unnecessary for this Court to resolve that issue at this juncture. The pivotal question now is not whether the ballot language was misleading; rather, it centers on whether this Court possesses the authority to invalidate the ordinance subsequent to its approval by voters, regardless of whether the language may be regarded as misleading. Neither plaintiff nor our dissenting colleague has provided this Court with any such authority, nor have they submitted any sources to substantiate the claim of such authority.

Remarkably, the majority raises the issue sua sponte. The parties will indeed be surprised to read that the pivotal question does not concern whether the ballot language was misleading but that it instead regards our authority to invalidate the ordinance. Neither party has ever raised the purported pivotal issue, below or on appeal, nor have they been given an opportunity to brief the question upon which the majority now decides this appeal. The parties, according to the majority's stance, have devoted their time and efforts to an issue that is entirely irrelevant. OCC never argued that the township had to challenge the language of the ballot proposal before the election; therefore, logically, the township has not cited any authority on the matter. And contrary to the majority's contention, I cite below multiple authorities that support invalidating the election results post-election.

With respect to the township's decision to file suit after the election, it must be noted that MCL 168.485 does not contain any language regarding the process or timing for raising a claim that the statute was violated. There certainly is no language suggesting that a challenge must be pursued and litigated before an election on a ballot proposal. Further, while an election result should generally stand without any judicial interference, this is not true when a violation of the statutory election law is of a character to obstruct the free and intelligent casting of a vote. See *Richey v Bd of Ed of Monroe Co*, 346 Mich 156, 167; 77 NW2d 361 (1956). In this case, the deceptive language of the ballot proposal obstructed the free and intelligent casting of votes. Our Supreme Court has also stated that "[i]t has been repeatedly held by this Court that irregularities in the conducting of an election will not invalidate the action taken unless it appears that the result was, or may have been, affected thereby." *Rosenbrock v Sch Dist No 3, Fractional Twps of Williams & Monitor*, 344 Mich 335, 339-343; 74 NW2d 32 (1955) (summarizing numerous opinions that support this general principle). It is nearly impossible to conclude that the deceptive ballot language did not affect the result of the election. The proof for that strong conclusion is unusually obvious: In the two previous elections in which the accurately-characterized ballot initiative was considered, it was rejected!

The majority contends that *Richey* and *Rosenbrock* are inapplicable to the instant case because here I am merely speculating about the effect on the election's outcome and am engaging in inappropriate fact-finding in the context of a motion for summary disposition without any supporting evidence that the language of the ballot proposal adversely impacted the electorate's vote. When this Court analyzes a motion for summary disposition under MCR 2.116(C)(10), we cannot resolve factual disputes; however, we are specifically tasked with examining the documentary evidence and determining whether it creates a genuine issue of material fact on the pertinent issues. *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506-507; 991 NW2d 230 (2022). Any time this Court grants summary disposition to a party under MCR 2.116(C)(10) on

the basis that reasonable minds would not differ on a controlling issue, there is, inherently, some level of speculation because it is impossible to know with 100 percent certainty what a trier of fact may do in any given case. In this case, I am not making a factual finding that the ballot language altered the results of the election. Rather, I am merely concluding that in light of the extremely deceptive language of the ballot proposal and the failure of two past accurately-described ballot proposals on the same subject that no genuine issue of material fact exists that the violation of MCL 168.485 obstructed the free and intelligent casting of votes, *Richey*, 346 Mich at 167, and that the result of the election "was, or may have been, affected" by the violation, *Rosenbrock*, 344 Mich at 339.

Furthermore, in *City of Farmington v Farmington Survey Comm*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 372022); slip op at 3 n 2, this Court recently observed:

> As a threshold matter, we note that the question whether regulations under MRTMA are a proper subject for a voter-initiated charter amendment is an issue that we can address before an election. That is, while substantive challenges to a proposed initiative should be considered after the local law is enacted, there are instances when preelection review is warranted to determine whether the petition meets the constitutional and statutory requirements for placement on the ballot. Stated differently, although this Court will not consider potential substantive conflicts before an election, this Court will consider the broader question whether a matter is a proper subject for an initiative. [Quotation marks and citations omitted.]

"A preelection determination of the validity of a ballot initiative substantially interferes with the legislative function, and our courts have repeatedly held that a substantive challenge to a proposed initiative is improper until after the law is enacted." *Coalition for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 371-372; 820 NW2d 208 (2012).

Accordingly, in this case, to the extent that the township's challenge is substantive in nature, there was nothing improper about waiting until after the election to file suit. Indeed, it would be the appropriate course of action under the binding caselaw. Moreover, assuming that the challenge is not substantive in nature, I conclude that *City of Farmington* and *Coalition for a Safer Detroit* indicated that while such a challenge can be raised before the election, they did not suggest that doing so after would be improper.[9] I suspect that OCC did its own legal research and

---

[9] As noted by the majority, it is true that in the earlier litigation, the township clerk had declined to certify the ballot wording solely on the basis that the proposed ordinance violated the Title-Object Clause. The majority maintains that the township had to challenge the ballot language under MCL 168.485 at the same time. But the analysis in this Court's opinion in *Turner* made clear that had the township or the township clerk asserted a failure to abide by MCL 168.485, the Court would have ruled that the township clerk had a duty to certify the wording of the ballot and that such a challenge had to be pursued after the election. The *Turner* panel held that certification of the ballot wording was ministerial and that the township clerk "was obliged to certify the ballot wording to the county clerk." *Turner*, unpub op at 5. The Court additionally ruled "that a township

-10-

reached the conclusion that any argument that the township's suit had to be pursued before the election would not succeed, explaining why it did not raise the issue developed by the majority.

In support of its position, the majority favorably cites *Citizens for Protection of Marriage*, 263 Mich App 487, but that case has no relevance to the question whether the township in the instant action was required to pursue its challenge under MCL 168.485 before the election. In the opening paragraph of *Citizens for Protection of Marriage*, this Court set forth the basic premise of the case and its ruling:

> Plaintiff Citizens for Protection of Marriage (CPM) filed a complaint for mandamus seeking an order of this Court compelling the Board of State Canvassers (Board) to declare CPM's petition sufficient and certify the petition for inclusion in the November 2, 2004, general election. We grant mandamus and retain jurisdiction. [*Id.* at 488-489.]

Thus, *Citizens for Protection of Marriage* necessarily involved a pre-election suit because CPM brought the action specifically for the purpose of having its initiative placed on the ballot—there would have been no election but for the mandamus complaint.

The majority next argues, on the basis of *In re Proposals D & H*, 417 Mich 409; 339 NW2d 848 (1983), that the township was precluded from arguing after the election that the ballot wording confused and misled voters, causing them to vote in favor of the proposal that otherwise would not have passed. In *In re Proposals D & H*, the Supreme Court observed:

> Fundamental principles of democratic self-government preclude the judiciary from substituting its judgment for that of the people. We have only that authority to overturn a proposal adopted by the people given us by the constitution. "Voter confusion" regarding Proposals D and H, whether an ancillary result of the initiative process or a product of political activity in support of, or in opposition to, the proposed laws, does not permit the judiciary to assume an authority to take corrective action which has not been granted by the organic instrument of government. [*Id.* at 423.]

This passage, however, only speaks to voter confusion, and MCL 168.485 goes beyond simple confusion and prohibits, in part, the prejudicial drafting of a ballot proposal. Here, the prejudicial drafting, in my opinion, was, in fact, deceptive drafting with the clear intent to make the voters think that they were voting for medical-use marijuana establishments only, as they had

---

clerk's attempt to declare that a ballot proposal is illegal before an election should not be countenanced." *Id.* So although the panel set forth these principles for purposes of analyzing and rejecting the title-object argument, the reasoning was sufficiently broad that it would have also defeated an argument under MCL 168.485 had it been posed. Implicitly, yet effectively, the analysis in *Turner* dictated that the township would have to await the election if it wished to challenge the language of the ballot proposal.

already voted and declined twice to allow recreational-use marijuana establishments. Moreover, the Court in *In re Proposals D & H* was not presented with an argument under MCL 168.485 because the statute, which I believe would constitute legislative or governmental authorization for a court to take corrective action, is not mentioned anywhere in the opinion. Finally, further undermining the majority's position in the instant case, the Supreme Court in *In re Proposals D & H* did not reject the case outright on the basis that it was a post-election challenge; rather, the appeal was substantively decided on the merits. See *In re Proposals D & H* generally.

Next, the majority takes me to task, expressing that "[t]he main concern with our dissenting colleague's attempt to grab power for the judiciary . . . lies in the absence of clear constitutional or statutory authority—along with a guiding principle—that would allow judicial interventions based solely on allegations of 'misleading language.' " Again, I have cited statutory authority, MCL 168.485, and Supreme Court precedent for my position, and in my view, reasonable persons would conclude that the language of the ballot proposal was patently misleading. Moreover, my opinion does not constitute an improper judicial grab for power. It is absolutely imperative that the judiciary enforce the election laws of the land when a challenge is presented to the courts and there is a violation of those laws; if not the judiciary, then who. Finally, the majority adopts the following view:

> The people are presumed to know what they want, to have understood the proposition submitted to them in all of its implications, and by their approval vote to have determined that this [proposal] is for the public good and expresses the free opinion of a sovereign people. [*In re Proposals D & H*, 417 Mich at 423 (quotation marks and citation omitted; alteration in original).]

I wholeheartedly agree with this proposition; however, in this case, the voters of the township could not express their "free" opinion, nor can we presume that they understood the ballot proposal, where OCC drafted the proposal using misleading and deceptive language.

## III. CONCLUSION

Although I am averse to declaring null and void a ballot initiative passed by the electorate, I conclude as a matter of law that the language of the ballot proposal was confusing and misleading, did not apprise the voters of the true, complete subject matter of the initiative or ordinance, was unclearly written, and created strong prejudice in favor of the proposal. Therefore, I would reverse the trial court's ruling and remand the case for entry of an order granting summary disposition to the township on its claims for declaratory relief. I disagree with the majority that the township could not challenge the ballot proposal's language in an action filed after the election took place. Accordingly, I dissent.

/s/ Jane E. Markey